FILED

May 04, 2010

CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA



0002607685

Thomas E. May, Trustee
BANKRUPTCY TRUSTEE
Elk Grove CA, 97579
(916) 686-8661
Temcotom@gmail.com

Bankruptcy Trustee

# UNITED STATES BANKRUPTCY COURT

# EASTERN DISTRICT OF CALIFORNIA

In Re,

CURRY, LINDA P.

      Debtor(s)

)
)
)
)
)
)
)
)
)
)

Case No. 09-38415-MSM -7

DCN: TEM-01
DATE: June 7, 2010
TIME: 9:00 AM
DEPT.: 7th Floor Courtroom 28

---

## MOTION TO SELL PROPERTY OF THE ESTATE FREE AND CLEAR OF LIENS

### and

## DECLARATION OF THOMAS E. MAY

I, THOMAS E. MAY, the duly appointed trustee in the above entitled matter, hereby move for an order authorizing the sale of real property commonly known as 11540 Skislope Way, Truckee, California, 96161 for a total of $48,336.00, subject to overbids at the time of hearing:

1.      The Debtor herein filed bankruptcy on August 31, 2009.  I have been appointed Trustee for the bankruptcy estate.

2. The Debtor owns real property commonly known as 11540 Skislope Way, Truckee, California, 96161 (County Assessor's Parcel No. 44-440-61, hereafter the "Real Property"). The Real Property is the Debtor's bare land lot.

3. The Debtor has made a claim of exemption in the amount of $21,825.00 pursuant to California Code of Civil Procedure Section 703.140(b)(1). No objection to the claim of exemption had been filed.

4. I have received and accepted an offer to purchase the Real Property from Robert & Kristi Darzynkiewicz, Glenn & Kathleen Whitlow (hereafter the "Buyer"). A copy of the Agreement is filed herein as Exhibit 1. The major terms of the agreement are as follows:

  a. The gross purchase price is $48,336.00.

  b. Buyers shall deliver to the Trustee a deposit of $2,500.00 within 24 hours of signing the agreement. The deposit becomes non-refundable upon certain conditions.

  c. The purchase is subject to the consideration by the court of overbids at the time of hearing.

  d. Obtaining a loan is not a condition of the agreement.

  e. Close of escrow will be no more than 20 days from the date of entry of the order approving the sale.

  f. All closing costs, fees, and other expenses of the sale will be paid 50/50 by the buyer and seller .

  g. The property is sold "as is, where is".

  h. Delivery of occupancy of the property is not a condition of the sale.

2. On January 25, 2010, this court approved the employment of Kane Schaller, Dickson Realty,Truckee California, as realtor for the estate.

3. I have reviewed a Preliminary Title Report prepared by Fidelity National Title, dated January 7, 2010, the Real Property is held free and clear of Liens, with the exception of property and association fees and taxes totaling $7,576.61.

4. I have estimated that the sale as proposed above will generate approximately $15,000.00 net equity after payment of costs of sale, liens and exemption of the Debtor.

5. The time for the filing of timely claims has passed. To date, there have been no claims filed for priority claims and 12 claims filed for $73,164.93 for general unsecured claims. Therefore, I am estimating that the sale will generate sufficient funds to pay the priority claims in full and provide a substantial benefit to unsecured creditors.

For the reasons above, I pray for an order of the court as follows:

1. Authorizing the sale of real property commonly known as 11540 Skislope Way, Truckee, California, 96161 (County Assessor's Parcel No. 44-440-61-000) to Robert & Kristi Darzynkiewicz, Glenn & Kathleen Whitlow for a purchase price of $48,336.00 upon the terms and conditions expressed in the Residential Purchase and Sale Agreement Dated April 29, 2010.

2. Authorizing the Trustee to pay realtor compensation in an amount not to exceed six percent (6%) of the gross sale price.

3. Authorizing the Trustee to execute all documents necessary to conclude the sale.

4. Requiring close of escrow no later than 20 days from the date of entry of the order approving the sale.

5.  Authorizing the Trustee to extend the deadline for close of escrow up to 60 days from the date of entry of this order if the Trustee determines such extension is in the best interest of the estate, upon the condition that the Buyers agree to pay any additional interest or other costs incurred by the delay.

Respectfully submitted:

DATE: 5/4/10

/s/ Thomas E. May

## DECLARATION OF THOMAS E. MAY

I, Thomas E. May, hereby declare under penalty of perjury:

1.  I am the Trustee in this case.

2.  I have reviewed all of the foregoing and it is true and correct and if called I would so testify.

DATE: 5/4/10

/s/ Thomas E. May

## Schedule of Exhibits

**Exhibit 1A--- Original Purchase Agreement, 29 pages**

**Exhibit 1B----Accepted and Signed Counter Offer, & Deposit, 2 pages**

**Exhibit 2-----Settlement Statement, 3 pages, and Title Prelim, 21 pages**

**Exhibit 3-----Economics of the Sale**

**Exhibit 1A---- Original Purchase Agreement, 29 pages**

*Exhibit / A   29 PAGES*

# COUNTER OFFER No. ONE

**DICKSON** REALTY

### For use by Seller or Buyer. May be used for Multiple Counter Offer.
### (C.A.R. Form CO, Revised 10/04)

CALIFORNIA ASSOCIATION OF REALTORS®

Date **April 22, 2010**, at _____, California.

This is a counter offer to the: ☐ California Residential Purchase Agreement, ☐ Counter Offer, or ☐ Other _____ ("Offer"),

dated _____, on property known as **11540 Skislope Way** ("Property")

between **Robert & Kristi Darzynkiewicz, Glenn & Kathleen Whitlow** ("Buyer") and **Thomas E. May, Trustee, Estate of Linda Curry** ("Seller").

1. **TERMS:** The terms and conditions of the above referenced document are accepted subject to the following:
   A. Paragraphs in the Offer that require initials by all parties, but are not initialed by all parties, are excluded from the final agreement unless specifically referenced for inclusion in paragraph 1C of this or another Counter Offer.
   B. Unless otherwise agreed in writing, down payment and loan amount(s) will be adjusted in the same proportion as in the original Offer.
   C. <u>Purchase Price to be $52,500 (Fifty Two Thousand Five Hundred Dollars)</u>

      <u>Buyer inspection period to be no more than 10 (ten) days</u>

   D. The following attached supplements are incorporated into this Counter Offer: ☐ Addendum No. _____
      ☐

2. **RIGHT TO ACCEPT OTHER OFFERS:** Seller has the right to continue to offer the Property for sale or for other transaction, and to accept any other offer at any time prior to notification of acceptance, as described in paragraph 3. If this is a Seller Counter Offer, Seller's acceptance of another offer prior to Buyer's acceptance and communication of notification of this Counter Offer, shall revoke this Counter Offer.

3. **EXPIRATION:** This Counter Offer shall be deemed revoked and the deposits, if any, shall be returned unless this Counter Offer is signed by the Buyer or Seller to whom it is sent and a Copy of the signed Counter Offer is personally received by the person making this Counter Offer or who is authorized to receive it, by 5:00 PM on the third Day After this Counter Offer is made or, (if checked) by ☐ _____ (date), at _____ ☐ AM ☐ PM. This Counter Offer may be executed in counterparts.

4. ☐ **(If checked:) MULTIPLE COUNTER OFFER:** Seller is making a Counter Offer(s) to another prospective buyer(s) on terms that may or may not be the same as in this Counter Offer. Acceptance of this Counter Offer by Buyer shall not be binding unless and until it is subsequently re-Signed by Seller in paragraph 7 below and a Copy of the Counter Offer Signed in paragraph 7 is personally received by Buyer or by _____, who is authorized to receive it, by 5:00PM on the third Day after this Counter Offer is made or, (if checked) by ☐ _____ (date), at _____ ☐ AM ☐ PM. Prior to the completion of all of these events, Buyer and Seller shall have no duties or obligations for the purchase or sale of the Property.

5. **OFFER:** ☐ BUYER OR ☒ SELLER MAKES THIS COUNTER OFFER ON THE TERMS ABOVE AND ACKNOWLEDGES RECEIPT OF A COPY.
   **Thomas E. May, Trustee,** *Thomas May, Trustee* Date 4/28/2010
   DocuSigned By Thomas May, Trustee
   **Estate of Linda Curry** _____ Date _____

6. **ACCEPTANCE: I/WE** accept the above Counter Offer (if checked ☐ **SUBJECT TO THE ATTACHED COUNTER OFFER)** and acknowledge receipt of a Copy.
   _____ Date _____ Time _____ ☐ AM ☐ PM
   _____ Date _____ Time _____ ☐ AM ☐ PM

7. **MULTIPLE COUNTER OFFER SIGNATURE LINE:** By signing below, Seller accepts this Multiple Counter Offer.
   **NOTE TO SELLER: Do NOT sign in this box until after Buyer signs in paragraph 6. (Paragraph 7 applies only if paragraph 4 is checked.)**
   _____ Date _____ Time _____ ☐ AM ☐ PM
   _____ Date _____ Time _____ ☐ AM ☐ PM

8. **(_____ / _____) (Initials) Confirmation of Acceptance:** A Copy of Signed Acceptance was personally received by the maker of the Counter Offer, or that person's authorized agent as specified in paragraph 3 (or, if this is a Multiple Counter Offer, the Buyer or Buyer's authorized agent as specified in paragraph 4) on (date) _____, at _____ ☐ AM ☐ PM. A binding Agreement is created when a Copy of Signed Acceptance is personally received by the the maker of the Counter Offer, or that person's authorized agent (or, if this is a Multiple Counter Offer, the Buyer or Buyer's authorized agent) whether or not confirmed in this document. Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has occurred.

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1986-2004, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.) NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

CO REVISED 10/04 (PAGE 1 OF 1)

## COUNTER OFFER (CO PAGE 1 OF 1)

Agent: **Kane Schaller** Phone: 530.587.7444 Fax: 530.587.8064 Prepared using WINForms® software
Broker: **Dickson Realty 11500 Donner Pass Rd Truckee, CA 96161**

DocuSign Envelope ID: 0CDE2645-9D78-4035-8074-375ACEEA05F0



# CONFIDENTIALITY AND NON-DISCLOSURE AGREEMENT
### (C.A.R. Form CND, 4/09)



This CONFIDENTIALITY AND NON-DISCLOSURE AGREEMENT ("Confidentiality Agreement") is given in connection with or in contemplation of that certain: ☐ Residential Purchase Agreement, ☒ Other *Vacant Land Purchase Agreement and Joint Escrow Instructions* dated *April 22, 2010* , ("Purchase Agreement") regarding property described as *11540 Skislope Way, Truckee CA 96161* , the ("Property") in which in which *Robert & Kristi Darzynkiewicz, Glenn & Kathleen Whitlow* is referred to as ("Buyer") and _____ is referred to as ("Seller").

**1. CONFIDENTIALITY:** Seller or Buyer is or will be delivering information described in paragraph 2 to the other party provided that the other party and its agents agree to keep the information confidential and not to disclose it prior to, during the pendency of, or after the completion or termination of any transaction that may result from the Purchase Agreement, except as authorized by the MLS rules or applicable law. Both parties agree that by signing this Confidentiality Agreement, and by providing or receiving the information below, neither party shall be required to execute or be bound by the Purchase Agreement. Each party agrees that it shall be responsible for any breach of this Confidentiality Agreement by its agents.

**2. CONFIDENTIAL INFORMATION:** (Check all that apply)
- ☐ Seller's ☒ Buyer's name *Robert & Kristi Darzynkiewicz, Glenn & Kathleen Whitlow*
- ☒ Offering price for the Property _____
- ☒ Offered terms for the Property _____
- ☒ Other: *Selling Agent or Broker* _____

**3. ATTORNEYS' FEES:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Confidentiality Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as otherwise provided in Purchase Agreement.

**4. TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the parties are incorporated in this Confidentiality Agreement. Its terms are intended by the parties as a final, complete and exclusive expression of their agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions may nevertheless be given full force and effect. Neither this Confidentiality Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.

THIS CONFIDENTIALITY AGREEMENT HAS SIGNIFICANT LEGAL CONSEQUENCES. BROKERS ARE NOT ATTORNEYS AND DO NOT PROVIDE LEGAL ADVICE. PRIOR TO SIGNING BELOW, EACH PARTY SHOULD SEEK THE ADVICE OF THEIR OWN LEGAL COUNSEL AS TO THE CONSEQUENCES OF THIS CONFIDENTIALITY AGREEMENT.

Date *4/22/2010* _____ Date _____ *4/22/2010*
BUYER *Robert J. Darzynkiewicz* *Kristi M. Darzynkiewicz* BUYER *Glenn E. Whitlow* *Kathleen M. Whitlow*
*Robert & Kristi Darzynkiewicz* *Glenn & Kathleen Whitlow*
(Print name)                                              (Print name)

Date *4/28/2010* _____ Date _____
SELLER *Thomas May, Trustee* _____ SELLER _____
(Print name)                                              (Print name)

Real Estate Broker (Listing Firm) *Dickson Realty* DRE Lic. # *1417710*
By *Kane Schaller* _____ DRE Lic. # *1316059* Date *4/28/2010*
(Salesperson or Broker-Associate)
*Kane Schaller*

Real Estate Broker (Selling Firm) *Pacific Crest Properties* DRE Lic. # *998-704*
By *Dionne Pope* _____ DRE Lic. # *01476057* Date *4/22/2010*
(Salesperson or Broker-Associate)
*Dionne Pope*

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 2009, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

CND 4/09 (PAGE 1 OF 1)

### CONFIDENTIALITY AND NON-DISCLOSURE AGREEMENT (CND PAGE 1 OF 1)

| Agent: Dionne Pope | Phone: 530-582-9775 | Fax: 530.587-2096 | Prepared using WINForms® software |
|---|---|---|---|
| Broker: Pacific Crest Properties 17400 Northwoods Blvd Truckee, CA 96161 | | | |



# DISCLOSURE REGARDING
# REAL ESTATE AGENCY RELATIONSHIP
### (Selling Firm to Buyer)
### (As required by the Civil Code)
### (C.A.R. Form AD, Revised 11/09)

**CALIFORNIA ASSOCIATION OF REALTORS®**

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

## SELLER'S AGENT

A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:

To the Seller: A Fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.

To the Buyer and the Seller:
    (a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
    (b) A duty of honest and fair dealing and good faith.
    (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

## BUYER'S AGENT

A selling agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:

To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.

To the Buyer and the Seller:
    (a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
    (b) A duty of honest and fair dealing and good faith.
    (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties.

An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

## AGENT REPRESENTING BOTH SELLER AND BUYER

A real estate agent, either acting directly or through one or more associate licensees, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.

In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:
    (a) A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
    (b) Other duties to the Seller and the Buyer as stated above in their respective sections.

In representing both Seller and Buyer, the agent may not, without the express permission of the respective party, disclose to the other party that the Seller will accept a price less than the listing price or that the Buyer will pay a price greater than the price offered.

The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction.

This disclosure form includes the provisions of Sections 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully.

**I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE BACK (OR A SEPARATE PAGE).**

☒ Buyer ☐ Seller ☐ Landlord ☐ Tenant    *Robert J. Darzynkiewicz*    *Kristi M. Darzynkiewicz*   Date   4/22/2010
     DocuSigned by: Robert J. Darzynkiewicz    DocuSigned by: Kristi M. Darzynkiewicz

☒ Buyer ☐ Seller ☐ Landlord ☐ Tenant    *Glenn E. Whitlow*    *Kathleen M. Whitlow*   Date   4/22/2010
     Glenn & Kathleen Whitlow    DocuSigned by: Kathleen M. Whitlow

Agent   _Pacific Crest Properties_   DRE Lic. # _998-704_
     Real Estate Broker (Firm)

By   *Dionne Pope*   DRE Lic. # _01476057_    Date   4/22/2010
     (Salesperson or Broker-Associate) Dionne Pope

---

**AGENCY DISCLOSURE COMPLIANCE (Civil Code §2079.14):**
- When the listing brokerage company also represents Buyer/Tenant: The Listing Agent shall have one AD form signed by Seller/Landlord and a different AD form signed by Buyer/Tenant.
- When Seller/Landlord and Buyer/Tenant are represented by different brokerage companies: (i) the Listing Agent shall have one AD form signed by Seller/Landlord and (ii) the Buyer's/Tenant's Agent shall have one AD form signed by Buyer/Tenant and either that same or a different AD form presented to Seller/Landlord for signature prior to presentation of the offer. If the same form is used, Seller may sign here:

4/28/2010

_____   _____      _____   _____
Seller/Landlord    , Trustee    Date        Seller/Landlord          Date

---

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1991-2009, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____


EQUAL HOUSING OPPORTUNITY

**AD REVISED 11/09 (PAGE 1 OF 2)**
**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 1 OF 2)**

---

| Agent: Dionne Pope | Phone: 530-582-9775 | Fax: 530.587-2096 | Prepared using WINForms® software |
|---|---|---|---|

Broker: Pacific Crest Properties 17400 Northwoods Blvd Truckee, CA 96161

## CIVIL CODE SECTIONS 2079.13 THROUGH 2079.24 (2079.16 APPEARS ON THE FRONT)

**2079.13** As used in Sections 2079.14 to 2079.24, inclusive, the following terms have the following meanings:
**(a)** "Agent" means a person acting under provisions of title 9 (commencing with Section 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. **(b)** "Associate licensee" means a person who is licensed as a real estate broker or salesperson under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code and who is either licensed under a broker or has entered into a written contract with a broker to act as the broker's agent in connection with acts requiring a real estate license and to function under the broker's supervision in the capacity of an associate licensee. The agent in the real property transaction bears responsibility for his or her associate licensees who perform as agents of the agent. When an associate licensee owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the associate licensee functions. **(c)** "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes vendee or lessee. **(d)** "Dual agent" means an agent acting, either directly or through an associate licensee, as agent for both the seller and the buyer in a real property transaction. **(e)** "Listing agreement" means a contract between an owner of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer. **(f)** "Listing agent" means a person who has obtained a listing of real property to act as an agent for compensation. **(g)** "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the listing agent. **(h)** "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. **(i)** "Offer to purchase" means a written contract executed by a buyer acting through a selling agent which becomes the contract for the sale of the real property upon acceptance by the seller. **(j)** "Real property" means any estate specified by subdivision (1) or (2) of Section 761 in property which constitutes or is improved with one to four dwelling units, any leasehold in this type of property exceeding one year's duration, and mobile homes, when offered for sale or sold through an agent pursuant to the authority contained in Section 10131.6 of the Business and Professions Code. **(k)** "Real property transaction" means a transaction for the sale of real property in which an agent is employed by one or more of the principals to act in that transaction, and includes a listing or an offer to purchase. **(l)** "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer, and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of Section 2985, and transactions for the creation of a leasehold exceeding one year's duration. **(m)** "Seller" means the transferor in a real property transaction, and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor. **(n)** "Selling agent" means a listing agent who acts alone, or an agent who acts in cooperation with a listing agent, and who sells or finds and obtains a buyer for the real property, or an agent who locates property for a buyer or who finds a buyer for a property for which no listing exists and presents an offer to purchase to the seller. **(o)** "Subagent" means a person to whom an agent delegates agency powers as provided in Article 5 (commencing with Section 2349) of Chapter 1 of Title 9. However, "subagent" does not include an associate licensee who is acting under the supervision of an agent in a real property transaction.

**2079.14** Listing agents and selling agents shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in Section 2079.16, and, except as provided in subdivision (c), shall obtain a signed acknowledgement of receipt from that seller or buyer, except as provided in this section or Section 2079.15, as follows: **(a)** The listing agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement. **(b)** The selling agent shall provide the disclosure form to the seller as soon as practicable prior to presenting the seller with an offer to purchase, unless the selling agent previously provided the seller with a copy of the disclosure form pursuant to subdivision (a). **(c)** Where the selling agent does not deal on a face-to-face basis with the seller, the disclosure form prepared by the selling agent may be furnished to the seller (and acknowledgement of receipt obtained for the selling agent from the seller) by the listing agent, or the selling agent may deliver the disclosure form by certified mail addressed to the seller at his or her last known address, in which case no signed acknowledgement of receipt is required. **(d)** The selling agent shall provide the disclosure form to the buyer as soon as practicable prior to execution of the buyer's offer to purchase, except that if the offer to purchase is not prepared by the selling agent, the selling agent shall present the disclosure form to the buyer not later than the next business day after the selling agent receives the offer to purchase from the buyer.

**2079.15** In any circumstance in which the seller or buyer refuses to sign an acknowledgement of receipt pursuant to Section 2079.14, the agent, or an associate licensee acting for an agent, shall set forth, sign, and date a written declaration of the facts of the refusal.
**2079.16** Reproduced on Page 1 of this AD form.
**2079.17 (a)** As soon as practicable, the selling agent shall disclose to the buyer and seller whether the selling agent is acting in the real property transaction exclusively as the buyer's agent, exclusively as the seller's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the selling agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. **(b)** As soon as practicable, the listing agent shall disclose to the seller whether the listing agent is acting in the real property transaction exclusively as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the listing agent prior to or coincident with the execution of that contract by the seller.
**(c)** The confirmation required by subdivisions (a) and (b) shall be in the following form.

**(DO NOT COMPLETE, SAMPLE ONLY)** _____ is the agent of (check one): ☐ the seller exclusively; or ☐ both the buyer and seller.
(Name of Listing Agent)

**(DO NOT COMPLETE, SAMPLE ONLY)** _____ is the agent of (check one): ☐ the buyer exclusively; or ☐ the seller exclusively; or
(Name of Selling Agent if not the same as the Listing Agent) ☐ both the buyer and seller.

**(d)** The disclosures and confirmation required by this section shall be in addition to the disclosure required by Section 2079.14.

**2079.18** No selling agent in a real property transaction may act as an agent for the buyer only, when the selling agent is also acting as the listing agent in the transaction.

**2079.19** The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.

**2079.20** Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of Section 2079.14 and Section 2079.17 are complied with.

**2079.21** A dual agent shall not disclose to the buyer that the seller is willing to sell the property at a price less than the listing price, without the express written consent of the seller. A dual agent shall not disclose to the buyer that the buyer is willing to pay a price greater than the offering price, without the express written consent of the buyer. This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.

**2079.22** Nothing in this article precludes a listing agent from also being a selling agent, and the combination of these functions in one agent does not, of itself, make that agent a dual agent.

**2079.23** A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship.

**2079.24** Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

Buyer's/Tenant's Initials ( RPO ) ( KMO ) ( RCW ) ( KMK )
Seller's/Landlord Initials ( ___ )

Reviewed by _____ Date _____

Copyright © 1991-2009, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
**AD REVISED 11/09 (PAGE 2 OF 2)**
**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 2 OF 2)**            Darzynkiewicz

DocuSign Envelope ID: 0CDE2645-9D78-4035-8074-375ACEEA05F0



# DISCLOSURE AND CONSENT FOR
# REPRESENTATION OF MORE THAN ONE
# BUYER OR SELLER
### (C.A.R. Form DA, 11/06)



CALIFORNIA
ASSOCIATION
OF REALTORS®

A real estate broker, whether a corporation, partnership or sole proprietorship, ("Broker") may represent more than one buyer or seller provided the Broker has made a disclosure and the principals have given their consent. This multiple representation can occur through an individual licensed as a broker or through different associate licensees acting for the Broker. The associates licensees may be working out of the same or different office locations.

Broker (individually or through its associate licensees) may be working with many prospective buyers at the same time. These prospective buyers may have an interest in, and make offers on, the same properties. Some of these properties may be listed with Broker and some may not. Broker will not limit or restrict any particular buyer from making an offer on any particular property whether or not Broker represents others interested in the same property.

Broker (individually or through its associate licensees) may have listings on many properties at the same time. As a result, Broker will attempt to find buyers for each of those listed properties. Some listed properties may appeal to the same prospective buyers. Some properties may attract more prospective buyers than others. Some of these prospective buyers may be represented by Broker and some may not. Broker will market all listed properties to all prospective buyers whether or not Broker has another or other listed properties that may appeal to the same prospective buyers.

Buyer and Seller understand that Broker may represent more than one buyer or seller and even both buyer and seller on the same transaction

If Seller is represented by Broker, Seller acknowledges that Broker may represent prospective buyers of Seller's property and consents to Broker acting as a dual agent for both Seller and Buyer in that transaction.

If Buyer is represented by Broker, Buyer acknowledges that Broker may represent sellers of property that Buyer is interested in acquiring and consents to Broker acting as a dual agent for both Buyer and Seller with regard to that property.

In the event of dual agency, Seller and Buyer agree that: **(a)** Broker, without the prior written consent of the Buyer, will not disclose to Seller that the Buyer is willing to pay a price greater than the offered price; **(b)** Broker, without the prior written consent of the Seller, will not disclose to the Buyer that Seller is willing to sell property at a price less than the listing price; and **(c)** other than as set forth in (a) and (b) above, a Dual Agent is obligated to disclose known facts materially affecting the value or desirability of the property to both parties.

**NON CONFIDENTIALITY OF OFFERS:** Buyer is advised that Seller or Listing Agent may disclose the existence, terms, or conditions of Buyer's offer unless all parties and their agent have signed a written confidentiality agreement. Whether any such information is actually disclosed depends on many factors, such as current market conditions, the prevailing practice in the real estate community, the Listing Agent's marketing strategy and the instructions of the Seller.

**Seller and/or Buyer acknowledges reading and understanding this Disclosure and Consent for Representation of More than One Buyer or Seller, and agree to the dual agency possibility disclosed.**

☐ Seller ☒ Buyer _Robert J. Darzynkiewicz_ _Kristi M. Darzynkiewicz_ Date _4/22/2010_
DocuSigned by: Robert J. Darzynkiewicz / Signed by: Kristi M. Darzynkiewicz

☐ Seller ☒ Buyer _Glenn E. Whitlow_ _Kathleen M. Whitlow_ Date _4/22/2010_
Glenn & Kathleen Pr. Whitlow / DocuSigned By: Kathleen M. Whitlow

Real Estate Broker (Firm) _Pacific Crest Properties_ Date _4/22/2010_

By _Dionne Pope_ _Dionne Pope_
DocuSigned By: Dionne Pope

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright© 1991-2006, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

| Reviewed by | Date |
| --- | --- |



**DA 11/06 (PAGE 1 OF 1)**

**REPRESENTATION OF MORE THAN ONE BUYER OR SELLER (DA PAGE 1 OF 1)**

| Agent: Dionne Pope | Phone: 530-582-9775 | Fax:530.587-2096 | Prepared using WINForms® software |
| --- | --- | --- | --- |

Broker: Pacific Crest Properties 17400 Northwoods Blvd Truckee, CA 96161

DocuSign Envelope ID: 0CDE2645-9D78-4035-8074-375ACEEA05F0



# CALIFORNIA
# ASSOCIATION
# OF REALTORS®

## VACANT LAND PURCHASE AGREEMENT
## AND JOINT ESCROW INSTRUCTIONS
### (C.A.R. Form VLPA, Revised 11/07)



Date __April 22, 2010__ , at _____ __Truckee__ _____ , California.
1. **OFFER:**
   A. **THIS IS AN OFFER FROM** ____Robert & Kristi Darzynkiewicz, Glenn & Kathleen Whitlow____ ("Buyer").
   B. **THE REAL PROPERTY TO BE ACQUIRED** is described as __11540 Skislope Way__
      _____ , Assessor's Parcel No(s). __44-440-61__ ,
      situated in _____ __Truckee__ _____ , County of _____ __Nevada__ _____ , California, ("Property").
   C. **THE PURCHASE PRICE** offered is __Forty-Five Thousand__
      _____ Dollars $ __45,000.00__ .
   D. **CLOSE OF ESCROW** shall occur on _____ (date) (or ☒ __30__ **Days After Acceptance**).
2. **FINANCE TERMS:** Obtaining the loans below is a contingency of this Agreement unless: (i) either 2D or 2L is checked below; or (ii) otherwise agreed in writing. Buyer shall act diligently and in good faith to obtain the designated loans. Obtaining deposit, down payment and closing costs is not a contingency. Buyer represents that funds will be good when deposited with Escrow Holder.
   A. **INITIAL DEPOSIT:** Buyer has given a deposit in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$ ____2,500.00____
      to the agent submitting the offer (or to ☐ _____ ), by Personal Check
      (or ☐ _____ ), made payable to ____Fidelity National Title____ ,
      which shall be held uncashed until Acceptance and then deposited within 3 business days after Acceptance
      (or ☐ _____ ), with
      Escrow Holder, (or ☐ into Broker's trust account).
   B. **INCREASED DEPOSIT:** Buyer shall deposit with Escrow Holder an increased deposit in the amount of . . . . . $ _____
      within _____ **Days After Acceptance, or** ☐ _____ .
   C. **FIRST LOAN IN THE AMOUNT OF** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$ _____
      ☐ NEW First Deed of Trust in favor of ☐ lender, ☐ seller;
      OR ☐ ASSUMPTION of Existing First Deed of Trust;
      encumbering the Property, securing a note payable at maximum interest of _____ % fixed rate, or
      _____ % initial adjustable rate with a maximum interest rate of _____ %, balance due in
      _____ years, amortized over _____ years (OR, if checked, ☐ payable in interest-only installments). Payments
      due ☐ monthly, ☐ quarterly, ☐ semi-annually, ☐ annually.
      Buyer shall pay loan fees/points not to exceed _____ .
   D. ☒ **ALL CASH OFFER** (If checked): No loan is needed to purchase the Property. Buyer shall, within 7 (or
      ☐ _____ ) Days After Acceptance, provide Seller written verification of sufficient funds to close this transaction.
   E. **ADDITIONAL FINANCING TERMS:** _____ $ _____
      _____
      _____
      _____
      _____
      _____
      _____
      _____
   F. **BALANCE OF PURCHASE PRICE:**
      (not including costs of obtaining loans and other closing costs) in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . .$ ____42,500.00____
      to be deposited with Escrow Holder within sufficient time to close escrow.
   G. **PURCHASE PRICE (TOTAL):** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$ ____45,000.00____
   H. **LOAN APPLICATIONS:** Within 7 (or ☐ _____ ) Days After Acceptance, Buyer shall provide Seller a letter from lender or mortgage loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified above.
   I. **VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Buyer (or Buyer's lender or loan broker pursuant to 2H) shall, within 7 (or ☐ _____ ) Days After Acceptance, provide Seller written verification of Buyer's down payment and closing costs.
   J. **LOAN CONTINGENCY REMOVAL:** (i) Within 17 (or ☐ _____ ) Days After Acceptance Buyer shall, as specified in paragraph 18, remove the loan contingency or cancel this Agreement; OR (ii) ( ☐ if checked), loan contingency shall remain in effect until the designated loans are funded.
   K. **APPRAISAL CONTINGENCY AND REMOVAL:** This Agreement is (OR, if checked, ☐ is NOT) contingent upon the Property appraising at no less than the specified purchase price. If there is a loan contingency, at the time the loan contingency is removed (or, if checked, ☐ within 17 (or ☐ _____ ) Days After Acceptance), Buyer shall, as specified in paragraph 18, remove the appraisal contingency or cancel this Agreement. If there is no loan contingency, Buyer shall, as specified in paragraph 18, remove the appraisal contingency within 17 (or _____ ) Days After Acceptance.
   L. ☐ **NO LOAN CONTINGENCY** (If checked): Obtaining any loan in paragraphs 2C, 2E or elsewhere in this Agreement is NOT a contingency of this Agreement. If Buyer does not obtain the loan and as a result Buyer does not purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.
   M. **SELLER FINANCING:** The following terms (or ☐ (if checked) the terms specified in the attached Seller Financing Addendum (C.A.R. Form SFA)) apply ONLY to financing extended by Seller under this Agreement.
      **(1) BUYER'S CREDIT-WORTHINESS:** Buyer authorizes Seller and/or Brokers to obtain, at Buyer's expense, a copy of Buyer's credit report.
      Within 7 (or ☐ _____ ) Days After Acceptance, Buyer shall provide any supporting documentation reasonably requested by Seller.

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1996-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

Buyer's Initials ( RD ) ( KMD ) ( GW ) ( KMW )
Seller's Initials ( _____ ) ( _____ )
Reviewed by _____ Date _____

**VLPA REVISED 11/07 (PAGE 1 OF 9)**

**VACANT LAND PURCHASE AGREEMENT (VLPA PAGE 1 OF 9)**

| Agent: Dionne Pope | Phone: 530-582-9775 | Fax: 530.587-2096 | Prepared using WINForms® software |
| --- | --- | --- | --- |
| Broker: Pacific Crest Properties 17400 Northwoods Blvd Truckee, CA 96161 | | | |

Property: _11540 Skislope Way_         Date: _April 22, 2010_

  (2) **TERMS:** Buyer's promissory note, deed of trust and other documents as appropriate shall incorporate and implement the following additional terms: (I) the maximum interest rate specified in paragraph 2C shall be the actual fixed interest rate for Seller financing; (II) deed of trust shall contain a REQUEST FOR NOTICE OF DEFAULT on senior loans; (III) Buyer shall sign and pay for a REQUEST FOR NOTICE OF DELINQUENCY prior to Close Of Escrow and at any future time if requested by Seller; (iv) note and deed of trust shall contain an acceleration clause making the loan due, when permitted by law and at Seller's option, upon the sale or transfer of the Property or any interest in it; (v) note shall contain a late charge of 6% of the installment due (or ☐ _____ ) if the installment is not received within 10 days of the date due; (vi) title insurance coverage in the form of a joint protection policy shall be provided insuring Seller's deed of trust interest in the Property (any increased cost over owner's policy shall be paid by Buyer); and (vii) tax service shall be obtained and paid for by Buyer to notify Seller if property taxes have not been paid.

  (3) **ADDED, DELETED OR SUBSTITUTED BUYERS:** The addition, deletion or substitution of any person or entity under this Agreement or to title prior to Close Of Escrow shall require Seller's written consent. Seller may grant or withhold consent in Seller's sole discretion. Any additional or substituted person or entity shall, if requested by Seller, submit to Seller the same documentation as required for the original named Buyer. Seller and/or Brokers may obtain a credit report, at Buyer's expense, on any such person or entity.

 **N. ASSUMED OR "SUBJECT TO" FINANCING:** Seller represents that Seller is not delinquent on any payments due on any loans. Seller shall, within the time specified in paragraph 18, provide Copies of all applicable notes and deeds of trust, loan balances and current interest rates to Buyer. Buyer shall then, as specified in paragraph 18B(3), remove this contingency or cancel this Agreement. Differences between estimated and actual loan balances shall be adjusted at Close Of Escrow by cash down payment. Impound accounts, if any, shall be assigned and charged to Buyer and credited to Seller. Seller is advised that Buyer's assumption of an existing loan may not release Seller from liability on that loan. If this is an assumption of a VA Loan, the sale is contingent upon Seller being provided a release of liability and substitution of eligibility, unless otherwise agreed in writing. If the Property is acquired subject to an existing loan, Buyer and Seller are advised to consult with legal counsel regarding the ability of an existing lender to call the loan due, and the consequences thereof.

**3. POSSESSION AND KEYS:** Possession and occupancy shall be delivered to Buyer at _____ ☐ AM ☐ PM, ☐ on the date of Close Of Escrow; ☐ on _____ ; or ☐ no later than _____ Days After Close Of Escrow. The Property shall be unoccupied, unless otherwise agreed in writing. Seller shall provide keys and/or means to operate all Property locks.

**4. ALLOCATION OF COSTS (If checked):** Unless otherwise specified here, this paragraph only determines who is to pay for the report, inspection, test or service mentioned. If not specified here or elsewhere in this Agreement, the determination of who is to pay for any work recommended or identified by any such report, inspection, test or service is by the method specified in paragraph 18.

 **A. INSPECTIONS AND REPORTS:**

  (1) ☐ Buyer ☐ Seller shall pay to have existing septic or private sewage disposal system, if any, inspected _____

  (2) ☐ Buyer ☐ Seller shall pay for costs of testing to determine the suitability of soil for sewage disposal _____

  (3) ☐ Buyer ☐ Seller shall pay to have existing wells, if any, tested for water potability and productivity _____

  (4) ☐ Buyer ☐ Seller shall pay to have Property corners identified _____

  (5) ☐ Buyer ☒ Seller shall pay for a natural hazard zone disclosure report prepared by _Seller's Choice_ _____

  (6) ☐ Buyer ☐ Seller shall pay for the following inspection or report _____

  (7) ☐ Buyer ☐ Seller shall pay for the following inspection or report _____

 **B. ESCROW AND TITLE:**

  (1) ☒ Buyer ☒ Seller shall pay escrow fee _Split 50/50_ _____
      Escrow Holder shall be _Fidelity National Title_ _____

  (2) ☒ Buyer ☒ Seller shall pay for owner's title insurance policy specified in paragraph 14 _Split 50/50_ _____
      Owner's title policy to be issued by _Fidelity National Title_ _____
      (Buyer shall pay for any title insurance policy insuring Buyer's Lender, unless otherwise agreed in writing.)

 **C. OTHER COSTS:**

  (1) ☐ Buyer ☒ Seller shall pay County transfer tax or transfer fee _____

  (2) ☐ Buyer ☐ Seller shall pay City transfer tax or transfer fee _____

  (3) ☒ Buyer ☐ Seller shall pay HOA transfer fees _____

  (4) ☐ Buyer ☐ Seller shall pay HOA document preparation fees _____

  (5) ☐ Buyer ☐ Seller shall pay for _____

  (6) ☐ Buyer ☐ Seller shall pay for _____

**5. STATUTORY DISCLOSURES AND CANCELLATION RIGHTS:**

 **A. NATURAL AND ENVIRONMENTAL HAZARDS:** Seller shall, within the time specified in paragraph 18, deliver to Buyer if required by Law: (i) earthquake guides (and questionnaire) and environmental hazards booklet; (II) disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; Seismic Hazard Zone; and (iii) disclose any other zone as required by Law and provide any other information required for those zones.

 **B. MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at www.meganslaw.ca.gov. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Brokers are required to check this website. If Buyer wants further information, Broker recommends that Buyer obtain information from this website during Buyer's inspection contingency period. Brokers do not have expertise in this area.)

Buyer's Initials ( RJD )( KmP )( GEW )( KmW )
Seller's Initials ( ImT )( )( )( )
Reviewed by _____ Date _____

Copyright: © 1996-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
**VLPA REVISED 11/07 (PAGE 2 OF 9)**

**VACANT LAND PURCHASE AGREEMENT (VLPA PAGE 2 OF 9)**      Darzynkiewicz

DocuSign Envelope ID: 0CDE2645-9D78-4035-8074-375ACEEA05F0

Property: _11540 Skislope Way_                             Date: _April 22, 2010_

**6. SELLER DOCUMENTATION AND ADDITIONAL DISCLOSURE:**
- **A.** Within the time specified in paragraph 18, if Seller has actual knowledge, Seller shall provide to Buyer, in writing, the following information:
  - **(1) LEGAL PROCEEDINGS:** Any lawsuits by or against Seller, threatening or affecting the Property, including any lawsuits alleging a defect or deficiency in the Property or common areas, or any known notices of abatement or citations filed or issued against the Property.
  - **(2) AGRICULTURAL USE:** Whether the Property is subject to restrictions for agricultural use pursuant to the Williamson Act (Government Code §§51200-51295).
  - **(3) DEED RESTRICTIONS:** Any deed restrictions or obligations.
  - **(4) FARM USE:** Whether the Property is in, or adjacent to, an area with Right to Farm rights (Civil Code §3482.5 and §3482.6).
  - **(5) ENDANGERED SPECIES:** Presence of endangered, threatened, 'candidate' species, or wetlands on the Property.
  - **(6) ENVIRONMENTAL HAZARDS:** Any substances, materials, or products that may be an environmental hazard including, but not limited to, asbestos, formaldehyde, radon gas, lead-based paint, fuel or chemical storage tanks, and contaminated soil or water on the Property.
  - **(7) COMMON WALLS:** Any features of the Property shared in common with adjoining landowners, such as walls, fences, roads, and driveways, and agriculture and domestic wells whose use or responsibility for maintenance may have an effect on the Property.
  - **(8) LANDLOCKED:** The absence of legal or physical access to the Property.
  - **(9) EASEMENTS/ENCROACHMENTS:** Any encroachments, easements or similar matters that may affect the Property.
  - **(10) SOIL FILL:** Any fill (compacted or otherwise), or abandoned mining operations on the Property.
  - **(11) SOIL PROBLEMS:** Any slippage, sliding, flooding, drainage, grading, or other soil problems.
  - **(12) EARTHQUAKE DAMAGE:** Major damage to the Property or any of the structures from fire, earthquake, floods, or landslides.
  - **(13) ZONING ISSUES:** Any zoning violations, non-conforming uses, or violations of "setback" requirements.
  - **(14) NEIGHBORHOOD PROBLEMS:** Any neighborhood noise problems, or other nuisances.
- **B. RENTAL AND SERVICE AGREEMENTS:** Within the time specified in paragraph 18, Seller shall make available to Buyer for inspection and review, all current leases, rental agreements, service contracts and other related agreements, licenses, and permits pertaining to the operation or use of the Property.
- **C.** ☐ **TENANT ESTOPPEL CERTIFICATES:** (If checked) Within the time specified in paragraph 18, Seller shall deliver to Buyer tenant estoppel certificates (C.A.R. Form TEC) completed by Seller or Seller's agent, and signed by tenants, acknowledging: (i) that tenants' rental or lease agreements are unmodified and in full force and effect (or if modified, stating all such modifications); (ii) that no lessor defaults exist; and (iii) stating the amount of any prepaid rent or security deposit.
- **D. MELLO-ROOS TAX; 1915 BOND ACT:** Within the time specified in paragraph 18, Seller shall: (i) make a good faith effort to obtain a notice from any local agencies that levy a special tax or assessment on the Property (or, if allowed, substantially equivalent notice), pursuant to the Mello-Roos Community Facilities Act, and Improvement Bond Act of 1915, and (ii) promptly deliver to Buyer any such notice obtained.

**7. CONDOMINIUM/PLANNED UNIT DEVELOPMENT DISCLOSURES:**
- **A. SELLER HAS: 7 (or** ☐ _____ **)** Days After Acceptance to disclose to Buyer whether the Property is a condominium, or located in a planned unit development or other common interest subdivision.
- **B.** If the Property is a condominium, or located in a planned unit development or other common interest subdivision, Seller has 3 (or ☐ _____ ) Days After Acceptance to request from the HOA (C.A.R. Form HOA): (i) Copies of any documents required by Law; (ii) disclosure of any pending or anticipated claim or litigation by or against the HOA; (iii) a statement containing the location and number of designated parking and storage spaces; (iv) Copies of the most recent 12 months of HOA minutes for regular and special meetings; (v) the names and contact information of all HOAs governing the Property; and (vi) the following if Seller has actual knowledge: (a) any material defects in the condition of common area (such as pools, tennis courts, walkways or other areas co-owned in undivided interest with other); and (b) possible lack of compliance with HOA requirements (collectively, "CI Disclosures"). Seller shall itemize and deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Buyer's approval of CI Disclosures is a contingency of this Agreement, as specified in paragraph 18.

**8. SUBSEQUENT DISCLOSURES:** In the event Seller, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer of which Buyer is otherwise unaware, Seller shall promptly provide a subsequent or amended disclosure or notice, in writing, covering those items. However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies disclosed in reports ordered and paid for by Buyer.

**9. CHANGES DURING ESCROW:**
- **A.** Prior to Close Of Escrow, Seller may engage in the following acts, ("Proposed Changes"), subject to Buyer's rights in paragraph 18: (i) rent or lease any part of the premises; (ii) alter, modify or extend any existing rental or lease agreement; (iii) enter into, alter, modify or extend any service contract(s); or (iv) change the status of the condition of the Property.
- **B.** At least 7 (or ☐ _____ ) Days prior to any Proposed Changes, Seller shall give written notice to Buyer of such Proposed Changes.

**10. CONDITIONS AFFECTING PROPERTY:**
- **A.** Unless otherwise agreed: (i) the Property is sold (a) in its PRESENT physical condition as of the date of Acceptance and (b) subject to Buyer Investigation rights; and (ii) the Property is to be maintained in substantially the same condition as on the date of Acceptance.
- **B.** ☐ (If checked) All debris and personal property not included in the sale shall be removed by Close Of Escrow.
- **C. SELLER SHALL,** within the time specified in paragraph 18, **DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS AFFECTING THE PROPERTY AND MAKE OTHER DISCLOSURES REQUIRED BY LAW.**
- **D. NOTE TO BUYER:** You are strongly advised to conduct investigations of the entire Property in order to determine its present condition since Seller may not be aware of all defects affecting the Property or other factors that you consider important. Property improvements may not be built according to code, in compliance with current Law, or have had permits issued.
- **E. NOTE TO SELLER:** Buyer has the right to inspect the Property and, as specified in paragraph 18, based upon information discovered in those inspections: (i) cancel this Agreement; or (ii) request that you make Repairs or take other action.



|  | DS | DS | DS | DS |
|---|---|---|---|---|
| Buyer's Initials ( | RPB | Kmg | gEu | Kmpw |
| Seller's Initials ( | | | | |

Copyright © 1996-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
**VLPA REVISED 11/07 (PAGE 3 OF 9)**

Reviewed by _____ Date _____

**VACANT LAND PURCHASE AGREEMENT (VLPA PAGE 3 OF 9)**      Darzynkiewicz

DocuSign Envelope ID: 0CDE2645-9D78-4035-8074-375ACEEA05F0

Property: _11540 Skislope Way_     Date: _April 22, 2010_

**11. ITEMS INCLUDED AND EXCLUDED:**

   **A.** NOTE TO BUYER AND SELLER: Items listed as included or excluded in the MLS, flyers or marketing materials are **not** included in the purchase price or excluded from the sale unless specified in 11B or C.

   **B.** ITEMS INCLUDED IN SALE:

      (1) All EXISTING fixtures and fittings that are attached to the Property;

      (2) The following items: _____

      (3) Seller represents that all items included in the purchase price, unless otherwise specified, are owned by Seller.

      (4) All items included shall be transferred free of liens and without Seller warranty.

   **C.** ITEMS EXCLUDED FROM SALE: _____

**12. BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**

   **A.** Buyer's acceptance of the condition of, and any other matter affecting the Property is a contingency of this Agreement, as specified in this paragraph and paragraph 18. Within the time specified in paragraph 18, Buyer shall have the right, at Buyer's expense, unless otherwise agreed, to conduct inspections, investigations, tests, surveys, and other studies ("Buyer Investigations"), including, but not limited to, the right to: (i) inspect for lead-based paint and other lead-based paint hazards; (ii) inspect for wood destroying pests and organisms; (iii) review the registered sex offender database; (iv) confirm the insurability of Buyer and the Property; and (v) satisfy Buyer as to any matter specified below. Without Seller's prior written consent, Buyer shall neither make nor cause to be made: (i) invasive or destructive Buyer Investigations; or (ii) inspections by any governmental building or zoning inspector, or government employee, unless required by Law.

   **B.** Buyer shall complete Buyer Investigations and, as specified in paragraph 18, remove the contingency or cancel this Agreement. Buyer shall give Seller, at no cost, complete Copies of all Buyer Investigation reports obtained by Buyer. Seller shall make Property available for all Buyer Investigations. If the following have already been connected and available, Seller shall have water, gas, electricity, and all operable pilot lights on for Buyer's Investigations and through the date possession is made available to Buyer.

   **BUYER IS STRONGLY ADVISED TO INVESTIGATE THE CONDITION AND SUITABILITY OF ALL ASPECTS OF THE PROPERTY AND ALL MATTERS THAT AFFECT THE VALUE OR DESIRABILITY OF THE PROPERTY, INCLUDING BUT NOT LIMITED TO, THE ITEMS SPECIFIED BELOW. IF BUYER DOES NOT EXERCISE THESE RIGHTS, BUYER IS ACTING AGAINST THE ADVICE OF BROKERS. BUYER UNDERSTANDS THAT ALTHOUGH CONDITIONS ARE OFTEN DIFFICULT TO LOCATE AND DISCOVER, ALL REAL PROPERTY CONTAINS CONDITIONS THAT ARE NOT READILY APPARENT AND THAT MAY AFFECT THE VALUE OR DESIRABILITY OF THE PROPERTY. BUYER AND SELLER ARE AWARE THAT BROKERS DO NOT GUARANTEE, AND IN NO WAY ASSUME RESPONSIBILITY FOR, THE CONDITION OF THE PROPERTY. BROKERS HAVE NOT AND WILL NOT VERIFY ANY OF THE ITEMS IN THIS PARAGRAPH 12, UNLESS OTHERWISE AGREED IN WRITING.**

   **C.** SIZE, LINES, ACCESS AND BOUNDARIES: Lot size, property lines, legal or physical access and boundaries including features of the Property shared in common with adjoining landowners, such as walls, fences, roads and driveways, whose use or responsibility for maintenance may have an effect on the Property and any encroachments, easements or similar matters that may affect the Property. (Fences, hedges, walls and other natural or constructed barriers or markers do not necessarily identify true Property boundaries. Property lines may be verified by survey.) (Unless otherwise specified in writing, any numerical statements by Brokers regarding lot size are APPROXIMATIONS ONLY, which have not been and will not be verified, and should not be relied upon by Buyer.)

   **D.** ZONING AND LAND USE: Past, present, or proposed laws, ordinances, referendums, initiatives, votes, applications and permits affecting the current use of the Property, future development, zoning, building, size, governmental permits and inspections. Any zoning violations, non-conforming uses, or violations of "setback" requirements. (Buyer should also investigate whether these matters affect Buyer's intended use of the Property.)

   **E.** UTILITIES AND SERVICES: Availability, costs, restrictions and location of utilities and services, including but not limited to, sewerage, sanitation, septic and leach lines, water, electricity, gas, telephone, cable TV and drainage.

   **F.** ENVIRONMENTAL HAZARDS: Potential environmental hazards, including, but not limited to, asbestos, lead-based paint and other lead contamination, radon, methane, other gases, fuel, oil or chemical storage tanks, contaminated soil or water, hazardous waste, waste disposal sites, electromagnetic fields, nuclear sources, and other substances, including mold (airborne, toxic or otherwise), fungus or similar contaminant, materials, products or conditions.

   **G.** GEOLOGIC CONDITIONS: Geologic/seismic conditions, soil and terrain stability, suitability and drainage including any slippage, sliding, flooding, drainage, grading, fill (compacted or otherwise), or other soil problems.

   **H.** NATURAL HAZARD ZONE: Special Flood Hazard Areas, Potential Flooding (Inundation) Areas, Very High Fire Hazard Zones, State Fire Responsibility Areas, Earthquake Fault Zones, Seismic Hazard Zones, or any other zone for which disclosure is required by Law.

   **I.** PROPERTY DAMAGE: Major damage to the Property or any of the structures or non-structural systems and components and any personal property included in the sale from fire, earthquake, floods, landslides or other causes.

   **J.** NEIGHBORHOOD, AREA AND PROPERTY CONDITIONS: Neighborhood or area conditions, including Agricultural Use Restrictions pursuant to the Williamson Act (Government Code §§51200-51295), Right To Farm Laws (Civil Code §3482.5 and §3482.6), schools, proximity and adequacy of law enforcement, crime statistics, the proximity of registered felons or offenders, fire protection, other government services, availability, adequacy and cost of any speed-wired, wireless internet connections or other telecommunications or other technology services and installations, proximity to commercial, industrial or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise, noise or odor from any source, abandoned mining operations on the Property, wild and domestic animals, other nuisances, hazards, or circumstances, protected species, wetland properties, botanical diseases, historic or other governmentally protected sites or improvements, cemeteries, facilities and condition of common areas of common interest subdivisions, and possible lack of compliance with any governing documents or Homeowners' Association requirements, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Buyer.

Buyer's Initials ( RJD ) ( Kmp ) ( GEW ) ( Kmw )
Seller's Initials ( _____ ) ( _____ )

Copyright © 1996-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
**VLPA REVISED 11/07 (PAGE 4 OF 9)**

Reviewed by _____ Date _____

**VACANT LAND PURCHASE AGREEMENT (VLPA PAGE 4 OF 9)**

Darzynkiewicz

Property: _11540 Skislope Way_        Date: _April 22, 2010_

**K. COMMON INTEREST SUBDIVISIONS: OWNER ASSOCIATIONS:** Facilities and condition of common areas (facilities such as pools, tennis courts, walkways, or other areas co-owned in undivided interest with others), Owners' Association that has any authority over the subject property, CC&Rs, or other deed restrictions or obligations, and possible lack of compliance with any Owners' Association requirements.

**L. SPECIAL TAX:** Any local agencies that levy a special tax on the Property pursuant to the Mello-Roos Community Facilities Act or Improvement Bond Act of 1915.

**M. RENTAL PROPERTY RESTRICTIONS:** Some cities and counties impose restrictions that limit the amount of rent that can be charged, the maximum number of occupants and the right of a landlord to terminate a tenancy.

**N. MANUFACTURED HOME PLACEMENT:** Conditions that may affect the ability to place and use a manufactured home on the Property.

**13. BUYER INDEMNITY AND SELLER PROTECTION FOR ENTRY UPON PROPERTY: Buyer shall: (i)** keep the Property free and clear of liens; **(ii)** Repair all damage arising from Buyer Investigations; and **(iii)** indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-Responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

**14. TITLE AND VESTING:**

  **A.** Within the time specified in paragraph 18, Buyer shall be provided a current preliminary (title) report, which is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. Buyer's review of the preliminary report and any other matters which may affect title are a contingency of this Agreement as specified in paragraph 18.

  **B.** Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except: **(i)** monetary liens of record unless Buyer is assuming those obligations or taking the Property subject to those obligations; and **(ii)** those matters which Seller has agreed to remove in writing.

  **C.** Within the time specified in paragraph 18, Seller has a duty to disclose to Buyer all matters known to Seller affecting title, whether of record or not.

  **D.** At Close Of Escrow, Buyer shall receive a grant deed conveying title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's supplemental escrow instructions. **THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.**

  **E.** Buyer shall receive a standard coverage owner's CLTA policy of title insurance. An ALTA policy or the addition of endorsements may provide greater coverage for Buyer. A title company, at Buyer's request, can provide information about the availability, desirability, coverage, and cost of various title insurance coverages and endorsements. If Buyer desires title coverage other than that required by this paragraph, Buyer shall instruct Escrow Holder in writing and pay any increase in cost.

**15. SALE OF BUYER'S PROPERTY:**

  **A.** This Agreement is NOT contingent upon the sale of any property owned by Buyer.

  **OR B.** ☐ (If checked) The attached addendum (C.A.R. Form COP) regarding the contingency for the sale of property owned by Buyer is incorporated into this Agreement.

**16.** ☐ **MANUFACTURED HOME PURCHASE** (If checked): The purchase of the Property is contingent upon Buyer acquiring a personal property manufactured home to be placed on the Property after Close Of Escrow. Buyer ☐ has ☐ has not entered into a contract for the purchase of a personal property manufactured home. Within the time specified in paragraph 18, Buyer shall remove this contingency or cancel this Agreement, **(OR,** if checked, ☐ this contingency shall remain in effect until the Close Of Escrow of the Property).

**17.** ☐ **CONSTRUCTION LOAN FINANCING** (If checked): The purchase of the Property is contingent upon Buyer obtaining a construction loan. A draw from the construction loan ☐ will ☐ will not be used to finance the Property. Within the time specified in paragraph 18, Buyer shall remove this contingency or cancel this Agreement (or, if checked, ☐ this contingency shall remain in effect until Close Of Escrow of the Property).

**18. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS: The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph must be in writing (C.A.R. Form CR).**

  **A. SELLER HAS: 7 (or** ☐ _____ **) Days After Acceptance** to deliver to Buyer all reports, disclosures and information for which Seller is responsible under paragraphs 2N, 4, 5A, 6, 7A, 10C and 14.

  **B. (1) BUYER HAS: 17 (or** ☐ _____ **) Days After Acceptance,** unless otherwise agreed, in writing, to complete all Buyer Investigations; approve all disclosures, reports and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property (including lead-based paint and lead-based paint hazards as well as other information specified in paragraph 5 and insurability of Buyer and the Property).

    **(2)** Within the time specified in 18B(1), Buyer may request that Seller make Repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to Buyer's requests.

    **(3)** By the end of the time specified in 18B(1) (or 2J for loan contingency; 2K for appraisal contingency; 16 for manufactured home purchase; and 17 for constructive home financing), Buyer shall remove, in writing, the applicable contingency (C.A.R. Form CR) or cancel this Agreement. However, if the following inspections, reports or disclosures are not made within the time specified in 18A, then Buyer has 5 (or ☐ _____ ) Days after receipt of any such items, or the time specified in 18B(1), whichever is later, to remove the applicable contingency or cancel this Agreement in writing: **(i)** government-mandated inspections or reports required as a condition of closing; **(ii)** Common Interest Disclosures pursuant to paragraph 7B; **(iii)** a subsequent or amended disclosure pursuant to paragraph 8; and **(iv)** Proposed Changes pursuant to paragraph 9.

  **C. CONTINUATION OF CONTINGENCY OR CONTRACTUAL OBLIGATION; SELLER RIGHT TO CANCEL:**

    **(1) Seller right to Cancel; Buyer Contingencies:** Seller, after first giving Buyer a Notice to Buyer to Perform (as specified below), may cancel this Agreement in writing and authorize return of Buyer's deposit if, by the time specified in this Agreement, Buyer does not remove in writing the applicable contingency or cancel this Agreement. Once all contingencies have been removed, failure of either Buyer or Seller to close escrow in time may be a breach of this Agreement.



Buyer's Initials ( RJD )( Kmb )( gEW )( Kmw )
Seller's Initials ( tsmj )( )

Copyright © 1996-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
**VLPA REVISED 11/07 (PAGE 5 OF 9)**

Reviewed by _____ Date _____

**VACANT LAND PURCHASE AGREEMENT (VLPA PAGE 5 OF 9)**

Darzynkiewicz

Property: _11540 Skislope Way_ _____ Date: _April 22, 2010_ _____

(2) **Continuation of Contingency:** Even after the expiration of the time specified in 18B, Buyer retains the right to make requests to Seller, remove in writing the applicable contingency or cancel this Agreement until Seller cancels pursuant to 18C(1). Once Seller receives Buyer's written removal of all contingencies, Seller may not cancel this Agreement pursuant to 18C(1).

(3) **Seller right to Cancel: Buyer Contract Obligations:** Seller, after first giving Buyer a Notice to Buyer to Perform (as specified below), may cancel this Agreement in writing and authorize return of Buyer's deposit for any of the following reasons: (i) if Buyer fails to deposit funds as required by 2A or 2B; (ii) if the funds deposited pursuant to 2A or 2B are not good when deposited; (iii) if Buyer fails to provide a letter as required by 2H; (iv) if Buyer fails to provide verification as required by 2D or 2I or supporting documentation pursuant to 2M; or (v) if Seller reasonably disapproves of the verification provided by 2D or 2I or the credit report or supporting documentation pursuant to 2M. **Seller is not required to give Buyer a Notice to Perform regarding Close Of Escrow.**

(4) **Notice To Buyer To Perform:** The Notice to Buyer to Perform (C.A.R. Form NBP) shall: (i) be in writing; (ii) be signed by Seller; and (iii) give Buyer at least 24 (or ☐ _____ ) hours (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A Notice to Buyer to Perform may not be given any earlier than **2 Days Prior** to the expiration of the applicable time for Buyer to remove a contingency or cancel this Agreement or meet an 18C(3) obligation.

**D.** **EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES:** If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in a separate written agreement between Buyer and Seller, Buyer shall conclusively be deemed to have: (i) completed all Buyer Investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; (ii) elected to proceed with the transaction; and (iii) assumed all liability, responsibility, and expense for repairs or corrections pertaining to that contingency or cancellation right, or for inability to obtain financing.

**E.** **EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written NOTICE OF CANCELLATION pursuant to rights duly exercised under the terms of this Agreement, Buyer and Seller agree to Sign mutual instructions to cancel the sale and escrow and release deposits, less fees and costs, to the party entitled to the funds. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. Release of funds will require mutual Signed release Instructions from Buyer and Seller, judicial decision or arbitration award.

**19.** **FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final inspection of the Property within 5 (or _____ ) Days Prior to Close Of Escrow, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: (i) the Property is maintained pursuant to paragraph 10A; (ii) Repairs have been completed as agreed; and (iii) Seller has complied with Seller's other obligations under this Agreement.

**20.** **ENVIRONMENTAL HAZARD CONSULTATION:** Buyer and Seller acknowledge: (i) Federal, state, and local legislation impose liability upon existing and former owners and users of real property, in applicable situations, for certain legislatively defined, environmentally hazardous substances; (ii) Broker(s) has/have made no representation concerning the applicability of any such Law to this transaction or to Buyer or to Seller, except as otherwise indicated in this Agreement; (iii) Broker(s) has/have made no representation concerning the existence, testing, discovery, location and evaluation of/for, and risks posed by, environmentally hazardous substances, if any, located on or potentially affecting the Property; and (iv) Buyer and Seller are each advised to consult with technical and legal experts concerning the existence, testing, discovery, location and evaluation of/for, and risks posed by, environmentally hazardous substances, if any, located on or potentially affecting the Property.

**21.** **LIQUIDATED DAMAGES:** If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. Buyer and Seller agree that this amount is a reasonable sum given that it is impractical or extremely difficult to establish the amount of damages that would actually be suffered by Seller in the event Buyer were to breach this Agreement. Release of funds will require mutual, Signed release Instructions from both Buyer and Seller, judicial decision or arbitration award.

| Buyer's Initials | _RJD_ / _Kmp_ _GEW_ / _Kmw_ | Seller's Initials | _TMT_ / |
|---|---|---|---|

**22.** **DISPUTE RESOLUTION:**

**A.** **MEDIATION:** Buyer and Seller agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action. Paragraphs 22B(2) and (3) below apply whether or not the Arbitration provision is initialed. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party commences an action without first attempting to resolve the matter through mediation, or refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED.

**B.** **ARBITRATION OF DISPUTES:** (1) Buyer and Seller agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration, including and subject to paragraphs 22B(2) and (3) below. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of real estate transactional Law experience, unless the parties mutually agree to a different arbitrator, who shall render an award in accordance with substantive California Law. The parties shall have the right to discovery in accordance with Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part III of the California Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Interpretation of this agreement to arbitrate shall be governed by the Federal Arbitration Act.

(2) **EXCLUSIONS FROM MEDIATION AND ARBITRATION:** The following matters are excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage, or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims, or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver of the mediation and arbitration provisions.

(3) **BROKERS:** Buyer and Seller agree to mediate and arbitrate disputes or claims Involving either or both Brokers, consistent with 22A and B, provided either or both Brokers shall have agreed to such mediation or arbitration prior to, or within a reasonable time after, the dispute or claim is presented to Brokers. Any election by either or both Brokers to participate in mediation or arbitration shall not result in Brokers being deemed parties to the Agreement.



Buyer's Initials ( _RJD_ ) ( _Kmp_ )( _GEW_ ) ( _Kmw_ )
Seller's Initials ( _TMT_ ) ( )

Reviewed by _____ Date _____



Copyright © 1996-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
**VLPA REVISED 11/07 (PAGE 6 OF 9)**

**VACANT LAND PURCHASE AGREEMENT (VLPA PAGE 6 OF 9)**

Darzynkiewicz

DocuSign Envelope ID: 0CDE2645-9D78-4035-8074-375ACEEA05F0

Property: _11540 Skislope Way_                 Date: _April 22, 2010_

**"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."**

**"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."**

| Buyer's Initials | | | | Seller's Initials | | / |
|---|---|---|---|---|---|---|

23. **PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless otherwise agreed in writing, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, HOA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special assessments that are now a lien but not yet due. The Property will be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: (I) for periods after Close Of Escrow, by Buyer; and (II) for periods prior to Close Of Escrow, by Seller. TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

24. **WITHHOLDING TAXES:** Seller and Buyer agree to execute any instrument, affidavit, statement or instruction reasonably necessary to comply with federal (FIRPTA) and California withholding Law, if required (C.A.R. Forms AS and AB).

25. **MULTIPLE LISTING SERVICE/PROPERTY DATA SYSTEM:** If Broker is a participant of a Multiple Listing Service ("MLS") or Property Data System ("PDS"), Broker is authorized to report to the MLS or PDS a pending sale and, upon Close Of Escrow, the terms of this transaction to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS or PDS.

26. **EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

27. **ATTORNEY FEES:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 22A.

28. **SELECTION OF SERVICE PROVIDERS:** If Brokers refer Buyer or Seller to persons, vendors, or service or product providers ("Providers"), Brokers do not guarantee the performance of any Providers. Buyer and Seller may select ANY Providers of their own choosing.

29. **TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the parties are incorporated in this Agreement. Its terms are intended by the parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. **Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.**

30. **OTHER TERMS AND CONDITIONS,** including attached supplements: _____
   ☐ Purchase Agreement Addendum (C.A.R. Form PAA paragraph numbers: _____)
   ☐ Seller shall provide Buyer with a Seller Vacant Land Questionnaire (C.A.R. form VLQ) within the time specified in paragraph 18A
   _X Addendum No. ONE ; made part of the CAR form CLA, dated January 18, 2010._
   _____
   _____
   _____
   _____
   _____
   _____

31. **DEFINITIONS:** As used in this Agreement:
   A. **"Acceptance"** means the time the offer or final counter offer is accepted in writing by a party and that acceptance is delivered to and personally received by the other party or that party's authorized agent in accordance with the terms of this offer or a final counter offer.
   B. **"Agreement"** means the terms and conditions of this accepted Vacant Land Purchase Agreement and any accepted counter offers and addenda.
   C. **"C.A.R. Form"** means the specific form referenced, or another comparable form agreed to by the parties.
   D. **"Close Of Escrow"** means the date the grant deed, or other evidence of transfer of title, is recorded. If the scheduled close of escrow falls on a Saturday, Sunday or legal holiday, then close of escrow shall be the next business day after the scheduled close of escrow date.
   E. **"Copy"** means copy by any means including photocopy, NCR, facsimile and electronic.
   F. **"Days"** means calendar days, unless otherwise required by Law.
   G. **"Days After"** means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59 PM on the final day.
   H. **"Days Prior"** means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.

Copyright © 1996-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
**VLPA REVISED 11/07 (PAGE 7 OF 9)**

| Buyer's Initials | | | |
|---|---|---|---|
| Seller's Initials | | | |

| Reviewed by | | Date | |
|---|---|---|---|

**VACANT LAND PURCHASE AGREEMENT (VLPA PAGE 7 OF 9)**     Darzynkiewicz

Property: _11540 Skislope Way_          Date: **_April 22, 2010_**

   I.    **"Electronic Copy" or "Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either one to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other.

   J.    **"Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.

   K.    **"Notice to Buyer to Perform"** means a document (C.A.R. Form NBP), which shall be in writing and signed by Seller and shall give Buyer at least 24 hours (or as otherwise specified in paragraph 18C(4)) to remove a contingency or perform as applicable.

   L.    **"Repairs"** means any repairs, alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.

   M.    **"Signed"** means either a handwritten or electronic signature on an original document, Copy or any counterpart.

   N.    **Singular and Plural** terms each include the other, when appropriate.

**32. AGENCY:**

   A.    **POTENTIALLY COMPETING BUYERS AND SELLERS:** Buyer and Seller each acknowledge receipt of a disclosure of the possibility of multiple representation by the Broker representing that principal. This disclosure may be part of a listing agreement, buyer-broker agreement or separate document (C.A.R. Form DA). Buyer understands that Broker representing Buyer may also represent other potential buyers, who may consider, make offers on or ultimately acquire the Property. Seller understands that Broker representing Seller may also represent other sellers with competing properties of interest to this Buyer.

   B.    **CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction:

      Listing Agent _____ _Dickson Realty_ _____ (Print Firm Name)
      is the agent of (check one): ☒ the Seller exclusively; or ☐ both the Buyer and Seller.
      Selling Agent _____ _Pacific Crest Properties_ _____ (Print Firm Name)
      (if not same as Listing Agent) is the agent of (check one): ☒ the Buyer exclusively; or ☐ the Seller exclusively; or ☐ both the Buyer and Seller.
      Real Estate Brokers are not parties to the Agreement between Buyer and Seller.

**33. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**

   A.    **The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder,** which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: 1, 2, 4, 14, 15B, 16, 17, 18E, 23, 24, 29, 30, 31, 33, 35, 38A, 39 and paragraph D of the section titled Real Estate Brokers on page 9. If a Copy of the separate compensation agreement(s) provided for in paragraph 35 or 38A, or paragraph D of the section titled Real Estate Brokers on page 9 is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of the Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions directly from Escrow Holder and will execute such provisions upon Escrow Holder's request. To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow.

   B.    A Copy of this Agreement shall be delivered to Escrow Holder within 3 business days after Acceptance (or ☐ _____ _____ ). Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement.

   C.    Brokers are a party to the Escrow for the sole purpose of compensation pursuant to paragraphs 35, 38A and paragraph D of the section titled Real Estate Brokers on page 9. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraphs 35 and 38A, respectively, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow, or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Escrow Holder shall immediately notify Brokers (i) if Buyer's initial or any additional deposit is not made pursuant to this Agreement or is not good at time of deposit with Escrow Holder; or (ii) if Buyer and Seller instruct Escrow Holder to cancel escrow.

   D.    A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within 2 business days after mutual execution of the amendment.

**34. SCOPE OF BROKER DUTY:** Buyer and Seller acknowledge and agree that: Brokers: (i) do not decide what price Buyer should pay or Seller should accept; (ii) do not guarantee the condition of the Property; (iii) do not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; (iv) shall not be responsible for identifying defects that are not known to Broker(s); (v) shall not be responsible for inspecting public records or permits concerning the title or use of the Property; (vi) shall not be responsible for identifying location of boundary lines or other items affecting title; (vii) shall not be responsible for verifying square footage, representations of others or information contained in inspection reports, MLS or PDS, advertisements, flyers or other promotional material, unless otherwise agreed in writing; (viii) shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller in the course of this representation; and (ix) shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

**35. BROKER COMPENSATION FROM BUYER:** If applicable, upon Close Of Escrow, **Buyer** agrees to pay compensation to Broker as specified in a separate written agreement between Buyer and Broker.

**36. TERMS AND CONDITIONS OF OFFER:** This is an offer to purchase the Property on the above terms and conditions. All paragraphs with spaces for initials by Buyer and Seller are incorporated in this Agreement only if initialed by all parties. If at least one but not all parties initial, a counter offer is required until agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance. Buyer has read and acknowledges receipt of a Copy of the offer and agrees to the above confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing.

Buyer's Initials ( _RJD_ ) ( _KMB_ ) ( _GEW_ ) ( _KMW_ )
Seller's Initials ( _TnT_ ) ( )

Copyright © 1996-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
**VLPA REVISED 11/07 (PAGE 8 OF 9)**

Reviewed by _____ Date _____

**VACANT LAND PURCHASE AGREEMENT (VLPA PAGE 8 OF 9)**

Darzynkiewicz

DocuSign Envelope ID: 0CDE2645-9D78-4035-8074-375ACEEA05F0

Property: 11540 Skislope Way _____ Date: April 22, 2010 _____

**37. EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit shall be returned, unless this offer is Signed by Seller, and a Copy of the Signed offer is personally received by Buyer, or by _____ Dionne Pope _____, who is authorized to receive it by 5:00 PM on the third Day after this offer is signed by Buyer (or, if checked, ☐ by _____ (date), at _____ ☐ AM ☐ PM).

| Date | 4/22/2010 ☐ AM☐ PM. | | Date | 4/22/2010 |
|---|---|---|---|---|
| BUYER | Robert J. Darzynkiewicz | | BUYER | Glenn E. Whitlow Kathleen M. Whitlow |
| By | Robert J. Darzynkiewicz | Kristi M. Darzynkiewicz | By | Glenn E. Whitlow | Kathleen M. Whitlow |
| Print Name | DocuSigned By: Robert M. Darzynkiewicz | DocuSigned By: Kristi M. Darzynkiewicz | Print Name | DocuSigned By: Glenn E. Whitlow | DocuSigned By: Kathleen M. Whitlow |
| Title | | | Title | |
| Address | | | Address | |

**38. BROKER COMPENSATION FROM SELLER:**
   A. Upon Close Of Escrow, Seller agrees to pay compensation to Broker as specified in a separate written agreement between Seller and Broker.
   B. If escrow does not close, compensation is payable as specified in that separate written agreement.

**39. ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property, or has the authority to execute this Agreement. Seller accepts the above offer, agrees to sell the Property on the above terms and conditions, and agrees to the above confirmation of agency relationships. Seller has read and acknowledges receipt of a Copy of this Agreement, and authorizes Broker to deliver a Signed Copy to Buyer.
   ☒ (if checked) **SUBJECT TO ATTACHED COUNTER OFFER, DATED** 4/28/2010 _____.

| Date | 4/28/2010 | | Date | |
|---|---|---|---|---|
| SELLER | Thomas May | | SELLER | |
| By | Thomas May, Trustee | | By | |
| Print Name | Thomas May, Trustee | | Print Name | |
| Title | | | Title | |
| Address | | | Address | |

( _____ / _____ ) Confirmation of Acceptance: A Copy of Signed Acceptance was personally received by Buyer or Buyer's authorized agent
(Initials) on (date) _____ at _____ ☐ AM ☐ PM. A binding Agreement is created when a Copy of Signed Acceptance is personally received by Buyer or Buyer's authorized agent whether or not confirmed in this document. Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has occurred.

**REAL ESTATE BROKERS:**
A. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.
B. Agency relationships are confirmed as stated in paragraph 32.
C. If specified in paragraph 2A, Agent who submitted offer for Buyer acknowledges receipt of deposit.
D. **COOPERATING BROKER COMPENSATION:** Listing Broker agrees to pay Cooperating Broker (**Selling Firm**) and Cooperating Broker agrees to accept, out of Listing Broker's proceeds in escrow: (I) The amount specified in the MLS or PDS, provided Cooperating Broker is a Participant of the MLS or PDS in which the Property is offered for sale or a reciprocal MLS or PDS, or ☐ (if checked) (II) the amount specified in a separate written agreement (C.A.R. Form CBC) between Listing Broker and Cooperating Broker.

Real Estate Broker (Selling Firm) Pacific Crest Properties _____ DRE Lic. # 998-704 _____
By Dionne Pope _____ Dionne Pope DRE Lic. # 01476057 Date 4/22/2010
Address 17400 Northwoods Blvd Dionne Pope _____ City Truckee _____ State CA _____ Zip 96161
Telephone (530) 582-9775 _____ Fax (530) 587-2091 _____ E-mail dionne@visitpcp.com

Real Estate Broker (Listing Firm) Dickson Realty _____ DRE Lic. # 1417710 _____
By Kane Schaller _____ Kane Schaller DRE Lic. # 1316059 Date 4/28/2010
Address DocuSigned By: Kane Schaller _____ City _____ State _____ Zip _____
Telephone _____ Fax _____ E-mail _____

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☐ a deposit in the amount of $ _____ ),
counter offer numbers _____ and _____ , and agrees to act as Escrow Holder subject to paragraph 33 of this Agreement, any supplemental escrow instructions and the terms of Escrow Holder's general provisions.

Escrow Holder is advised that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is _____

Escrow Holder _____ Escrow # _____
By _____ Date _____
Address _____
Phone/Fax/E-mail _____
Escrow Holder is licensed by the California Department of ☐ Corporations, ☐ Insurance, ☐ Real Estate. License # _____

( _____ / _____ ) **REJECTION OF OFFER:** No counter offer is being made. This offer was reviewed and rejected by Seller on
(Seller's Initials) _____ (Date)

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

| Reviewed by _____ Date _____ |
|---|

DocuSign Envelope ID: 0CDE2645-9D78-4035-8074-375ACEEA05F0



CALIFORNIA
ASSOCIATION
OF REALTORS®

**ADDENDUM**

(C.A.R. Form ADM, Revised 10/01)



No. _ONE_

The following terms and conditions are hereby incorporated in and made a part of the: ☐ Residential Purchase Agreement, ☐ Manufactured Home Purchase Agreement, ☐ Business Purchase Agreement, ☐ Residential Lease or Month-to-Month Rental Agreement, ☐ Vacant Land Purchase Agreement, ☐ Residential Income Property Purchase Agreement, ☐ Commercial Property Purchase Agreement, ☒ other _CAR form CLA_

dated ___January 18, 2010___ , on property known as _11540 Skislope Way_

in which _____ _To be determined_ _____ is referred to as ("Buyer/Tenant")
and _____ _Estate of Linda Curry, Thomas E. May Trustee_ _____ is referred to as ("Seller/Landlord").

_1) Sale is subject to U.S. Bankruptcy Court approval and possible overbid._

_2) Upon court approval, buyer to increase the deposit to $5,000. This deposit is_
_non-refundable. Buyer has no contingencies after court approval._

_3) If buyer is overbid, buyer's deposit will be refunded._

_4) Trustee is exempt from most seller disclosures including the Transfer Disclosure_
_Statement and the Supplemental Statutory and Contractual Disclosures. The Trustee has no_
_knowledge of the property._

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this document.

Date ___4/22/2010___                                      Date _____

Buyer/Tenant _Robert J. Darzynkiewicz, Kristi M. Darzynkiewicz_   Seller/Landlord _Estate of Linda Curry, Thomas_
DocuSigned By: Robist M Darzynkiewicz

Buyer/Tenant _Glenn E. Whitlow_   Seller/Landlord _Estate of Linda Curry,_
DocuSigned By: Glenn E. Whitlow   DocuSigned By: Kathleen M. Whitlow

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright© 1996-2001, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by
Broker or Designee _____ Date _____

**ADM-11 REVISED 10/01 (PAGE 1 OF 1)**

**ADDENDUM (ADM-11 PAGE 1 OF 1)**

| Agent: Kane Scholler | Phone: 530.587.7444 | Fax: 530.587.8064 | Prepared using WINForms® software |
|---|---|---|---|
| Broker: Dickson Realty 11500 Donner Pass Rd Truckee, CA 96161 | | | |

DocuSign Envelope ID: 0CDE2645-9D78-4035-8074-375ACEEA05F0



## Addendum to the Purchase Agreement
## Tahoe Donner Properties

This addendum, dated __4/22/10__ to the purchase agreement, dated __4/22/10__,
for the property known as:___11540 Skislope Way___
in which the seller is known as:___Thomas E. May, Trustee___
and the buyer is known as:___Robert & Kristi Darzynkiewicz, Glenn & Kathleen Whitlow___

**It is strongly recommended that Buyer hire professionals to conduct inspections in all areas regarding the property.**

☑ **1. Future Financial Impacts:** Agents make no representations as to costs of future required Association or Government retrofits, actions or upgrades, construction costs or potential rental income of the property. Buyer is advised to make investigations necessary to satisfy concerns regarding these issues.

☐ **2. New Construction:** Seller shall obtain the final inspection and Certificate of Occupancy, and provide the buyer with copies. Seller is ☐ is not ☐ a licensed General Building Contractor in the State of California. Seller shall warrant all materials and workmanship for one year from close of escrow. Seller shall provide buyer with all applicable appliance warranties and manuals prior to close of escrow. House is to be phone and cable ready, including ground wires. Access to wiring is to be readily available for installation as required by service providers.

☑ **3. Subdivision Final Approval:** Tahoe Donner has inspection requirements for new construction/remodels. It is the seller's responsibility to obtain the appropriate approvals/certification for the property and provide buyer with copies.

☐ **4. Licensees:** If applicable, check the appropriate choice below:
☐ Seller is a licensed Real Estate Agent
☐ Buyer is a licensed Real Estate Agent

☑ **5. Typical Prorations:** Property taxes, homeowner dues, sewer fees, propane left in tank, tank rental, existing snow removal contracts, sewer bond or improvement bond assessments, if any and water district fees are prorated at the close of escrow. Buyer will transfer all utilities, including power, natural gas, water, sewer, trash and snow removal into his/her name at close of escrow.

☑ **6. Foliage:** Buyer should make all investigations to verify the general condition of trees and other landscaping on property. Trees and other vegetation are susceptible to disease. Some of the trees may require qualified care and/or removal. Dead or dying vegetation represents fire and falling hazards.

Tahoe Donner
Purchase Addendum
Revised 11/2/09

| Buyer Initials | RJD | KMD | GEW | KMW |
|---|---|---|---|---|
| Seller Initials | TmT | | | |

Broker Initials _GP_

Date __4/22/2010__



☑ **7. Snow Removal:** Buyer should contact snow removal contractor to ascertain availability and costs for snow removal as well as location of snow storage areas.

☐ **8. Property Condition:** Property shall be clean and free of all seller personal property not included in the purchase. All paint, stain, household cleaning products and other hazardous waste are to be removed from the premises prior to close of escrow. All walkways, driveways and decks are to be clear of snow.
 ☐ House is to be professionally cleaned.
 ☐ Carpets are to be professionally cleaned.
 ☐ _____.

☑ **9. Defensible Space Ordinance:** The Tahoe Donner Forestry Department has a defensible space ordinance and inspection program. Law requires that property owners comply with established standards for fire prevention and defensible space standards. Questions should be directed the Tahoe Donner Forestry Department at (530) 587-9432.

☑ **10. Winterization, Freezing Conditions, and Snow Impacts:** Subject property is located in an area of heavy seasonal snowfall and freezing temperatures. Electricity, telephone, and fuel supplies have occasionally failed. Unprotected or undrained pipes may freeze. Water supply should be turned off and systems drained when building is not occupied. Snow should be removed from shedding roofs, decks, walkways, propane tanks, gas meters, regulators and any other areas that might create a hazard. Care should be exercised to protect self, property and others form excessive snow loads and falling snow and ice. Snow and ice loading may, under certain circumstances, exceed design limits, creating the danger of damage, ice dams, breakage or collapse. Buyer should verify with their insurance carrier whether or not structure and/or contents are covered for damage due to ice, snow, water and freezing temperatures.

☑ **11. Other Brokers:** Buyer represents that buyer has not entered into and exclusive representation agreement with another broker to represent buyer in acquiring real property, land or manufactured home which would obligate them to pay, or cause to be paid compensation.

☑ **12. Planned Development:** Tahoe Donner is a planned development with CC&R's, architectural guidelines, mandatory homeowner membership dues and common areas.

☑ **13. Controlling Agencies:** Tahoe Donner properties are subject to the Town of Truckee Building Department regulations and ordinances and to Tahoe Donner CC&R's and architectural guidelines. Questions should be directed to the Town of Truckee (530) 587-7820, or Tahoe Donner Architectural Standards Office (530) 587-9407.

☐ **14. Sewer Testing:** Seller shall comply with local sewer testing regulations as required by the Truckee Sanitation District. If escrow is scheduled to close during months when testing cannot be completed, seller agrees to withhold monies in escrow as required by Truckee Sanitation District, until necessary work/clearance can be completed and certified.



| Buyers Initials | RJB | KMB | GEW | KMB |
|---|---|---|---|---|
| Sellers Initials | TMT | | | |

Broker Initials: JP
Date 4/22/2010

DocuSign Envelope ID: 0CDE2645-9D78-4035-8074-375ACEEA05F0

☑ **15. Roadways:** Roadways in Tahoe Donner are maintained by the Town of Truckee. During periods of heavy snowfall, access may be restricted in some areas. Further, no parking is allowed on streets during the winter months. Violators are subject to citation and/or towing at owner's expense. Buyer is advised to keep off street parking cleared.

☐ **16. Non-Compliant Woodstoves:** The Town of Truckee has an ordinance requiring the removal of all non-certified woodstoves and fireplace inserts within the Town of Truckee by May 31, 2008. Seller and Buyer should contact the Town at (530) 582-7700, or visit the website at http://truckee2025.org/irqual/stovercm.htm for information regarding this ordinance. If a woodstove or insert is non-compliant, the Town may require the stove(s) to be removed or replaced when a new building permit is issued, or if the Town receives a complaint. Seller and Buyer agree to the following action prior to close of escrow:

    ☐ Seller to remove all non-compliant woodstoves and/or inserts to satisfy the minimum requirements. Removal shall include waterproof of chimney cap and proper disposal.

    ☐ Seller to replace all non-compliant woodstoves and/or inserts with Town approved appliance.

    ☐ Buyer accepts any non-compliant woodstove and/or insert.

☐ **17. Propane:** If subject property has propane service, tank and regulator should be kept free of snow and supply lines should be in safe operating condition. Propane leaks from inadequately maintained tanks and lines can be extremely hazardous. Buyer is advised to have a thorough professional inspection of the propane system.

☑ **18. Tahoe Donner Homeowner Association Documents:** Minutes of the Homeowner Association meetings and current financial documents are available for review during normal business hours at the Northwoods Clubhouse Office, 11509 Northwoods Blvd. or may be viewed on the web at www.tahoedonner.com.

**EACH PARAGRAPH CHECKED ABOVE IS HEREBY INCORPORATED INTO THE PURCHASE AGREEMENT.**

**Agent: Pacific Crest Properties**
**By: Dionne Pope** _Dionne Pope_ **Date:** 4/22/2010
DocuSigned By: Dionne Pope

**Buyer and Seller hereby acknowledge receipt of a copy of this statement:**

**Buyer:** _Robert J. Darzynkiewicz_ _Kristi M. Darzynkiewicz_ **Date:** 4/22/2010
DocuSigned By: Robert J. Darzynkiewicz / DocuSigned By: Kristi M. Darzynkiewicz

**Buyer:** _Glenn E. Whitlow_ _Kathleen M. Whitlow_ **Date:** 4/22/2010
DocuSigned By: Glenn E. Whitlow / DocuSigned By: Kathleen M. Whitlow

**Seller:** _Thomas May, Trustee_ **Date:** 4/28/2010
DocuSigned By: Thomas May, Trustee

**Seller:** _____ **Date:** _____

Broker Initials: _S.P._ Date: 4/22/2010

DocuSign Envelope ID: 0CDE2645-9D78-4035-8074-375ACEEA05F0



**CALIFORNIA ASSOCIATION OF REALTORS®**

## STATEWIDE BUYER AND SELLER ADVISORY
**(This Form Does Not Replace Local Condition Disclosures.**
**Additional Addenda May Be Attached to This Advisory. See Paragraph 45)**
**(C.A.R. Form SBSA, Revised 4/07)**



*11540 Skislope Way*
Property Address: _____ *Truckee, CA  96161* _____ ("Property").

**BUYER RIGHTS AND DUTIES:**
The physical condition of the land and improvements being purchased are not guaranteed by Seller or Brokers.
You should conduct thorough investigations of the Property personally and with appropriate professionals.
If professionals recommend further inspections, you should contact qualified experts to conduct such inspections.
You should retain your own professional even if Seller or Broker has provided you with existing reports.
You should read all written reports given to you and discuss those reports with the persons who prepared them.
You have the right to request that the Seller make repairs, corrections or take other actions based on inspections or disclosures.
If the Seller is unwilling or unable to satisfy your requests, and you act within certain time periods, you may have the right to cancel the agreement. If you cancel outside these periods, you may be in breach of contract.
The terms of the purchase agreement and any counter offers and addenda establish your rights and responsibilities.
**YOU ARE STRONGLY ADVISED TO INVESTIGATE THE CONDITION AND SUITABILITY OF ALL ASPECTS OF THE PROPERTY. IF YOU DO NOT DO SO, YOU ARE ACTING AGAINST THE ADVICE OF BROKERS.**

**SELLER RIGHTS AND DUTIES:**
You have a duty to disclose material facts known to you that affect the value or desirability of the Property.
You are obligated to make the Property available to the Buyer for inspections allowed by the contract.
This form is not a substitute for completing a Real Estate Transfer Disclosure Statement, if required, and any other property-specific questionnaire or disclosure.
The terms of the Purchase Agreement and any Counter Offers and Addenda establish your rights and responsibilities.

**BROKER RIGHTS AND DUTIES:**
Brokers do not have expertise in all areas and matters affecting the Property or your evaluation of it.
For most sales of residential properties with no more than four units, Brokers have a duty to make a reasonably competent and diligent visual inspection of the accessible areas of the Property and disclose to you material facts or defects that the inspection reveals.
Many defects and conditions may not be discoverable by a Broker's visual inspection.
If Broker gives a referral to another professional, Broker does not guarantee that person's performance. You may select any professional of your own choosing.
Any written agreement between Broker and Buyer or Seller establishes the rights and responsibilities of those parties.

**1. INSPECTIONS:** Buyer and Seller are advised that Buyer has the right to obtain various inspections of the Property under most residential purchase agreements. Buyer is advised to have the Property inspected by a professional property inspection service within Buyer's inspection contingency period. A licensed building contractor or other professional may perform these services. The inspector generally does not look behind walls or under carpets, or take equipment apart. Certain items on the Property, such as chimneys and spark arresters, plumbing, heating, air conditioning, electrical wiring, pool and spa, septic system, well, roof, foundation and structural items may need to be inspected by another professional, such as a chimney sweep, plumber, electrician, pool and spa service, septic or well company or roofer. A general physical inspection typically will not test for mold, wood destroying pests, lead-based paint, radon, asbestos and other environmental hazards, geologic conditions, age, remaining useful life or water-tightness of roof, cracks, leaks or operational problems associated with a pool or spa or connection of the Property to a sewer system. If Buyer wants further information on any aspect of the Property, Broker recommends that Buyer have a discussion with the professional property inspector and that Buyer hire an appropriate professional for the area of concern to Buyer. Brokers do not have expertise in these areas. Brokers do not verify the results of any such inspection or guarantee the performance of any such inspector or service. Any election by Buyer to waive the right to a physical inspection of the Property or to rely on somebody other than an appropriate professional is against the advice of Brokers. Not all inspectors are licensed and licenses are not available for all types of inspection activities.

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 2004-2008, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.
**SBSA REVISED 4/07 (PAGE 1 OF 10)**

Buyer's Initials ( RJD ) ( Kmz ) ( gEW ) ( Kmzw )
Seller's Initials ( zml ) ( )

Reviewed by _____ Date _____

## STATEWIDE BUYER AND SELLER ADVISORY (SBSA PAGE 1 OF 10)

| Agent: **Dionne Pope** | Phone: **530-582-9775** | Fax: **530.587-2096** | Prepared using WINForms® software |
|---|---|---|---|
| Broker: **Pacific Crest Properties 17400 Northwoods Blvd Truckee, CA 96161** | | | |

*11540 Skislope Way*

Property Address: _Truckee, CA  96161_                                      Date: _April 22, 2010_

**2.  SQUARE FOOTAGE, LOT SIZE AND BOUNDARIES:** Buyer and Seller are advised that only an appraiser or land surveyor, as applicable, can reliably confirm square footage, lot size, Property corners and exact boundaries of the Property. Representations regarding these items that are made in a Multiple Listing Service, advertisements, and from property tax assessor records are often approximations, or based upon inaccurate or incomplete records. Fences, hedges, walls or other barriers may not represent actual boundary lines. Brokers have not verified any such representations. Brokers do not have expertise in this area. If Buyer wants information about the exact square footage, lot size or location of Property corners or boundaries, Broker recommends that Buyer hire an appraiser or licensed surveyor to investigate these matters during Buyer's inspection contingency period.

**3.  SOIL AND GEOLOGIC CONDITIONS:** Buyer and Seller are advised that real estate in California is subject to settling, slippage, contraction, expansion, subsidence, earthquakes and other land movement. The Property may be constructed on fill or improperly compacted soil and may have inadequate drainage capability. Any of these matters can cause structural problems to improvements on the Property. Civil or geo-technical engineers are best suited to evaluate soil stability, grading, drainage and other soil conditions. Additionally, the Property may have known or unknown mines, mills, caves or wells. Brokers do not have expertise in this area. If Buyer wants further information, Broker recommends that Buyer hire an appropriate professional. Not all inspectors are licensed and licenses are not available for all types of inspections.

**4.  GEOLOGIC HAZARDS:** Buyer and Seller are advised that California has experienced earthquakes in the past, and there is always a potential of future earthquakes. Damage caused by an earthquake may not be discoverable by Buyer's or Brokers visual inspection. Inspection by a licensed, qualified professional is strongly recommended to determine the structural integrity and safety of all structures and improvements on the Property. If the Property is a condominium, or located in a planned unit development or in a common interest subdivision, Buyer is advised to contact the homeowners association about earthquake repairs and retrofit work and the possibility of an increased or special assessment to defray the costs of earthquake repairs or retrofit work. Buyer is encouraged to obtain and read the booklet entitled "The Homeowners Guide to Earthquake Safety." In most cases a questionnaire within the booklet must be completed by Seller and the entire booklet given to the Buyer if the Property was built prior to 1960. If the Property was built before 1975, and contains structures constructed of masonry or precast (tilt up) concrete walls, with wood frame floors or roof, or if the building has unreinforced masonry walls, then Seller must provide Buyer a pamphlet entitled "The Commercial Property Owner's Guide to Earthquake Safety." Many areas have a wide range of geologic problems and numerous studies have been made of these conditions. Some of this information is available for public review at city and county planning departments. Buyer is encouraged to review the public maps and reports and/or obtain a geologist's inspection report. Brokers do not have expertise in this area. Buyer may be able to obtain earthquake insurance to protect their interest in the Property. Sellers who agree to provide financing should also consider requiring Buyers to obtain such insurance.

**5.  ENVIRONMENTAL HAZARDS:** Buyer and Seller are advised that the presence of certain kinds of organisms, toxins and contaminants, including, but not limited to, mold (airborne, toxic or otherwise), fungi, mildew, lead-based paint and other lead contamination, asbestos, formaldehyde, radon, methane, other gases, fuel oil or chemical storage tanks, contaminated soil or water, hazardous waste, waste disposal sites, electromagnetic fields, nuclear sources, urea formaldehyde, or other materials may adversely affect the Property and the health of individuals who live on or work at the property as well as pets. If Buyer wants further information, Buyer is advised and Broker recommends that Buyer have the Property inspected for the existence of such conditions and organisms, and conditions that may lead to their formation. Not all inspectors are licensed and licenses are not available for all types of inspection activities. Buyer is also advised to consult with appropriate experts regarding this topic during Buyer's inspection contingency period. Brokers do not have expertise in this area. Broker recommends that Buyer and Seller read the booklets titled, "Residential Environmental Hazards: A Guide for Homeowners, Homebuyers, Landlords and Tenants," and "Protect Your Family From Lead In Your Home."

**6.  MOLD:** Buyer and Seller are advised that the presence of certain kinds of mold, fungi, mildew and other organisms, sometimes referred to as "toxic mold" (collectively "Mold") may adversely affect the Property and the health of individuals who live on or work at the Property as well as pets. Mold does not affect all people the same way, and may not affect some people at all. Mold may be caused by water leaks or other sources of moisture such as, but not limited to, flooding, and leaks in windows, pipes and roof. Seller is advised to disclose the existence of any such condition of which he or she is aware. Buyer should carefully review all of Seller's disclosures for any indication that any of these conditions exist. It is, however, possible that Mold may be hidden and that Seller is completely unaware of its existence. In addition, Mold is often undetectable from a visual inspection, a professional property inspection and even a structural pest control inspection. Brokers do not have expertise in this area. If Buyer wants further information, Broker recommends that Buyer have the Property tested for Mold by an environmental hygienist or other appropriate professional during Buyer's inspection contingency period. Not all inspectors are licensed and licenses are not available for all types of inspection activities.

Buyer's Initials ( _____ ) ( _____ )
Seller's Initials ( _____ ) ( _____ )

Copyright © 2004-2008, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
SBSA REVISED 4/07 (PAGE 2 OF 10)

Reviewed by _____ Date _____

**STATEWIDE BUYER AND SELLER ADVISORY (SBSA PAGE 2 OF 10)**                    Darzynkiewicz

DocuSign Envelope ID: 0CDE2645-9D78-4035-8074-375ACEEA05F0

11540 Skislope Way

Property Address: **Truckee, CA  96161** _____  Date: **April 22, 2010**

**7.  WATER INTRUSION:** Buyer and Seller are advised that many homes suffer from water intrusion or leakage. The causes of water intrusion are varied, and can include defective construction, faulty grading, deterioration of building materials and absence of waterproof barriers. Water intrusion can cause serious damage to the Property. This damage can consist of wood rot, mold, mildew and even damage to the structural integrity of the Property. The cost of repairing and remediating water intrusion damage and its causes can be very significant. The existence and cause of water intrusion is often difficult to detect. Because you, your Broker or a general home inspector cannot visually observe any effects of water intrusion, Buyer and Seller should not assume that such intrusion does not exist. Broker recommends that Buyer have the Property inspected for water intrusion by an appropriate professional. Brokers do not have expertise in this area.

**8.  SEPTIC SYSTEM(S):** Buyer and Seller are advised that a property may be served by one or more septic systems even though adjoining properties are connected to a sewer line. Buyer and Seller are also advised that some septic tanks and systems may have been abandoned or have leaked into ground water sources. Buyer is advised to contact the appropriate government agency to verify that the Property is connected to a sewer or served by a septic system. If the Property is served by a septic system it may consist of a septic tank, cesspool, pits, leach lines or a combination of such mechanisms ("collectively, System"). No representation or warranty is made by Seller or Broker concerning the condition, operability, size, capacity or future expansion of a System, nor whether a System is adequate for use by the intended occupants of the Property. A change in the number of occupants or the quantity, composition or methods of depositing waste may affect the efficiency of the System. In addition, the amount of rainfall and ground water table may also affect the efficiency of the System. Many factors including, but not limited to, natural forces, age, deterioration of materials and the load imposed on a System can cause the System to fail at any time. Broker recommends that Buyer obtain an independent evaluation of any System by a qualified sanitation professional during Buyer's inspection contingency period. Brokers do not have expertise in this area. Buyer should consult with their sanitation professional to determine if their report includes the tank only, or other additional components of the System such as pits and leach fields. Not all inspectors are licensed and licenses are not available for all types of inspection activities. In some cases, Buyer's lender as well as local government agencies may require System inspection. System-related maintenance costs may include, but not be limited to, locating, pumping or providing outlets to ground level. Brokers are unable to advise Buyer or Seller regarding System-related issues or associated costs, which may be significant. If Buyer and Seller agree to obtain a System inspection, Buyer and Seller are cautioned that the inspection cost may include, but not be limited to, the costs of locating, pumping or providing outlets to ground level.

**9.  WELL AND WATER SYSTEM(S):** Buyer and Seller are advised that the Property may be served by one or more water wells, springs, or private community or public water systems. Any of these private or public water systems may contain bacteria, chemicals, minerals and metals, such as chromium. Well(s) may have been abandoned on the Property. Buyer is advised to have both the quality and the quantity of water evaluated, and to obtain an analysis of the quality of any domestic and agricultural water in use, or to be used at the Property, from whatever source. Water quality tests can include not only tests for bacteria, such as coliform, but also tests for organic and inorganic chemicals, metals, mineral content and gross alpha testing for radioactivity. Broker recommends that Buyer consult with a licensed, qualified well and pump company and local government agency to determine whether any well/spring or water system will adequately serve Buyer's intended use and that Buyer have a well consultant perform an extended well output test for this purpose. Water well or spring capacity, quantity output and quality may change at any time. There are no guarantees as to the future water quality, quantity or duration of any well or spring. If Buyer wants further information, Broker recommends that Buyer obtain an inspection of the condition, age, adequacy and performance of all components of the well/spring and any water system during Buyer's inspection contingency period. Brokers do not have expertise in this area.

**10.  WOOD DESTROYING PESTS:** Buyer and Seller are advised that the presence of, or conditions likely to lead to the presence of, or other infestation or infection of wood destroying pests and organisms may adversely affect the Property. Inspection reports covering these items can be separated into two sections: Section 1 identifies areas where infestation or infection is evident. Section 2 identifies areas where there are conditions likely to lead to infestation or infection. Brokers do not have expertise in this area. If Buyer wants further information, Buyer is advised and Broker recommends that Buyer have the Property inspected for the existence of such conditions and organisms, and conditions that may lead to their formation by a registered structural pest control company during Buyer's inspection contingency period.

**11.  EASEMENTS, ACCESS AND ENCROACHMENTS:** Buyer and Seller are advised that confirming the exact location of easements, shared or private driveways or roadways, and encroachments on or to the Property may be possible only by conducting a survey. There may be unrecorded easements, access rights, encroachments and other agreements affecting the Property that may not be disclosed by a survey. Representations regarding these items that are made in a Multiple Listing Service, advertisements, or plotted by a title company are often approximations, or based upon inaccurate or incomplete records. Brokers have not verified any such representations. If Buyer wants further information Buyer is advised and Broker recommends that Buyer hire a licensed surveyor during Buyer's inspection contingency period. Brokers do not have expertise in this area.

Buyer's Initials ( _RJD_ ) ( _KMD_ ) ( _GEW_ ) ( _KMW_ )
Seller's Initials ( _LML_ ) ( _____ )

Reviewed by _____ Date _____

Copyright © 2004-2008, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
SBSA REVISED 4/07 (PAGE 3 OF 10)

**STATEWIDE BUYER AND SELLER ADVISORY (SBSA PAGE 3 OF 10)**       Darzynkiewicz

DocuSign Envelope ID: 0CDE2645-9D78-4035-8074-375ACEEA05F0

*11540 Skislope Way*

Property Address: **Truckee, CA  96161** Date: **April 22, 2010**

**12. EARTHQUAKE FAULT ZONES AND SEISMIC HAZARD ZONES:** Buyer and Seller are advised that California Public Resources Code Sections 2622 and 2696 require the delineation and mapping of "Earthquake Fault Zones" along known active faults and "Seismic Hazard Zones" in California. Affected cities and counties must regulate certain development projects within these zones. Construction or development on affected properties may be subject to the findings of a geological report prepared by a registered California geologist. Generally, Seller must disclose if the Property is in such a zone and can use a research company to aid in the process. If Buyer wants further information, Broker recommends that, during Buyer's inspection contingency period, Buyer make independent inquiries with such research companies or with appropriate government agencies concerning the use and improvement of the Property. Brokers do not have expertise in this area. Buyer is advised that there is a potential for earthquakes and seismic hazards even outside designated zones.

**13. FIRE HAZARDS:** Buyer and Seller are advised that fires annually cause the destruction of thousands of homes. Due to varied climate and topography, certain areas have higher risks of fires than others. Certain types of materials used in home construction create a greater risk of fire than others. If the Property is located within a State Fire Responsibility Area or a Very High Fire Hazard Zone, generally Seller must disclose that fact to Buyer under California Public Resources Code Section 4136 and California Government Code Sections 51178 and 51183.5, and may use a research company to aid in the process. If Buyer wants further information, Broker recommends that, during Buyer's inspection contingency period, Buyer contact the local fire department and Buyer's insurance agent, regarding the risk of fire. Brokers do not have expertise in this area. Buyer is advised that there is a potential for fires even outside designated zones.

**14. FLOOD HAZARDS:** Buyer and Seller are advised that if the Property is located within a Special Flood Hazard Area, as designated by the Federal Emergency Management Agency, or an area of Potential Flooding pursuant to California Government Code Section 8589.3, generally Seller must disclose this fact to Buyer and may use a research company to aid in the process. The National Flood Insurance Program was established to identify all flood plain areas and establish flood-risk zones within those areas. The program mandates flood insurance for properties within high-risk zones if loans are obtained from a federally-regulated financial institution or are insured by any agency of the United States Government. The extent of coverage and costs may vary. If Buyer wants further information, Broker recommends that Buyer consult his or her lender and/or insurance agent during Buyer's inspection contingency period. Brokers do not have expertise in this area. Buyer is advised that there is a potential for flooding even outside designated zones.

**15. BUILDING PERMITS, ZONING AND CODE COMPLIANCE:** Buyer and Seller are advised that any structure on the Property, including the original structure and any addition, modification, remodel or improvement may have been built without permits, not according to building codes, or in violation of zoning laws. Further, even if such structure was built according to the then-existing code or zoning requirement, it may not be in compliance with current building standards or local zoning. It is also possible that local law may not permit structures that now exist to be rebuilt in the event of damage or destruction. Buyer is advised to check with appropriate government agencies or third party professionals to verify permits and legal requirements and the effect of such requirements on current and future use of the Property, its development and size. If Buyer wants further information Broker recommends that Buyer discuss the issue with an appropriate professional during Buyer's inspection contingency period. Brokers do not have expertise in this area.

**16. VIEWS:** Buyer and Seller are advised that present views from the Property may be affected by future development or growth of trees and vegetation on adjacent properties and any other property within the line of sight of the Property. Broker makes no representation regarding the preservation of existing views. If Buyer wants further information, Broker recommends that Buyer review Covenants, Conditions and Restrictions, if any, and contact neighboring property owners, government agencies and homeowner associations, if any, during Buyer's inspection contingency period. Brokers do not have expertise in this area.

**17. FUTURE REPAIRS, REPLACEMENTS AND REMODELS:** Buyer and Seller are advised that replacement or repairs of certain systems or remodels of portions of the Property may trigger requirements that homeowners comply with laws and regulations that either come into effect after Close of Escrow or are not required to be complied with until the replacement, repair or remodel has occurred. Permit or code requirements or building standards may change after Close of Escrow, resulting in increasing costs to repair existing features. In particular, changes to state and federal energy efficiency regulations impact the installation, replacement and some repairs of heating and air conditioning units (HVAC). Federal regulations now require manufacturers of HVAC units to produce only units meeting a new higher Seasonal Energy Efficiency Rating (SEER). This will likely impact repairs and replacements of existing HVAC units. State regulations now require that when installing or replacing HVAC units, with some exceptions, duct work must be tested for leaks. Duct work leaking more than 15 percent must be repaired to reduce leaks. The average existing duct work typically leaks 30 percent. More information is available at the California Energy Commission's website http://www.energy.ca.gov/title24/changeout. Home warranty policies may not cover such inspections or repairs. If Buyer wants further information Broker recommends that Buyer discuss the issue with an appropriate professional during Buyer's inspection contingency period. Brokers do not have expertise in this area.

**18. ERRANT GOLF BALLS:** Buyer and Seller are advised that if the Property is located adjacent to or near a golf course there is a possibility that golf balls may damage the Property or injure persons or pets on it. Additionally, persons playing golf may enter the Property to retrieve errant golf balls or for other purposes. Broker recommends that Buyer investigate this possibility during Buyer's Inspection contingency period. Brokers do not have expertise in this area.

Buyer's Initials ( RJD | KmD ) | gEW | KmW
Seller's Initials ( TmT )

Copyright © 2004-2008, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
**SBSA REVISED 4/07 (PAGE 4 OF 10)**

Reviewed by _____ Date _____

**STATEWIDE BUYER AND SELLER ADVISORY (SBSA PAGE 4 OF 10)**

Darzynkiewicz

DocuSign Envelope ID: 0CDE2645-9D78-4035-8074-375ACEEA05F0

11540 Skislope Way

Property Address: **Truckee, CA  96161**                    Date: **April 22, 2010**

**19. SCHOOLS:** Buyer and Seller are advised that children living in the Property may not, for numerous reasons, be permitted to attend the school nearest the Property. Various factors including, but not limited to, open enrollment policies, busing, overcrowding and class size reductions may affect which public school serves the Property. School district boundaries are subject to change. Buyer is advised to verify whether the Property is now, and at the Close of Escrow will be, in the school district Buyer understands it to be in and whether residing in the Property entitles a person to attend any specific school that Buyer is interested in. Broker recommends that Buyer contact the local school or school district for additional information during Buyer's inspection contingency period. Brokers do not have expertise in this area.

**20. NEIGHBORHOOD NOISE SOURCES:** Buyer and Seller are advised that even if the Property is not in an identified airport noise influence area the Property may still be subject to airplanes and other aircraft, commercial or military or both, flying overhead. Other common sources of noise include traffic on streets and highways, trains and general neighborhood noise from people, dogs and other animals. Noise levels and types of noise that bother one person may be acceptable to others. Buyer is advised to satisfy him/herself with regard to any sources of and amounts of noise at different times of day and night. Brokers do not have expertise in this area.

**21. PETS AND ANIMALS:** Buyer and Seller are advised that the current or previous owner(s) may have had domesticated or other pets and animals at the Property. Odors from animal urine contamination may be dormant for long periods of time and then become active because of heat, humidity or other factors and may not be eliminated by cleaning or replacing carpets or other cleaning. Pet urine and feces can also damage hardwood floors and other floor coverings. Additionally, an animal may have had fleas, ticks and other pests that remain on the Property after the animal has been removed. If Buyer wants further information, Broker recommends that Buyer discuss the issue with an appropriate professional during Buyer's inspection contingency period. Brokers do not have expertise in this area.

**22. SECURITY AND SAFETY:** Buyer and Seller are advised that state and local Law may require the installation of barriers, access alarms, self-latching mechanisms and/or other measures to decrease the risk to children and other persons of existing swimming pools and hot tubs, as well as various fire safety and other measures concerning other features of the Property. Compliance requirements differ from city to city and county to county. Unless specifically agreed, the Property may not be in compliance with these requirements. Brokers do not have expertise in this area. If Buyer wants further information, Broker recommends that Buyer contact local government agencies about these restrictions and other requirements.

**23. RETROFIT:** Buyer and Seller are advised that state and local Law may require the installation of operable smoke detectors, bracing or strapping of water heaters, and completion of a corresponding written statement of compliance that is delivered to Buyer. Some city and county governments may impose additional retrofit standards, including, but not limited to, installing low-flow toilets and showerheads, gas shut-off valves, and tempered glass. Brokers do not have expertise in this area. Broker recommends that Buyer and Seller consult with the appropriate government agencies, inspectors, and other professionals to determine the retrofit standards for the Property, the extent to which the Property complies with such standards, and the costs, if any, of compliance.

**24. WATER SHORTAGES AND CONSERVATION:** Buyer and Seller are advised that the Property may be located in an area that could experience water shortages. The policies of local water districts and the city or county in which the Property is located can result in the occurrence of any or all of the following: (i) limitations on the amount of water available to the Property, (ii) restrictions on the use of water, and (iii) an increasingly graduated cost per unit of water use, including, but not limited to, penalties for excess usage. For further information, Broker recommends that Buyer contact the supplier of water to the Property regarding the supplier's current or anticipated policies on water usage and to determine the extent to which those policies may affect Buyer's intended use of the Property. If the Property is serviced by a private well, Buyer is advised that drought conditions and/or a low water table may make it necessary to arrange, through a private supplier, for delivery of water to the Property. Buyers should contact water truck companies for the costs involved. Brokers do not have expertise in this area.

**25. NEIGHBORHOOD, AREA; PERSONAL FACTORS:** Buyer and Seller are advised that the following may affect the Property or Buyer's intended use of it: neighborhood or area conditions, including schools, proximity and adequacy of law enforcement, crime, fire protection, other government services, availability, adequacy and cost of any speed-wired, wireless internet connections or other telecommunications or other technology services and installations, proximity to manufacturing, commercial, industrial, airport or agricultural activities or military ordnance locations, existing and proposed transportation, construction, and development, any other source that may affect noise, view, traffic, or odor, wild and domestic animals, other nuisances, hazards, or circumstances, protected species, wetland properties, botanical diseases, historic or other governmentally-protected sites or improvements, cemeteries, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Buyer.



Copyright © 2004-2008, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
SBSA REVISED 4/07 (PAGE 5 OF 10)

**STATEWIDE BUYER AND SELLER ADVISORY (SBSA PAGE 5 OF 10)**

Darzynkiewicz

11540 Skislope Way
Property Address: __Truckee, CA  96161__        Date: __April 22, 2010__

**26. INSURANCE:** Buyer and Seller are advised that Buyer may have difficulty obtaining insurance regarding the Property if there has been a prior insurance claim affecting the Property or made by Buyer but unrelated to the Property. Seller is required by C.A.R. Form RPA to disclose known insurance claims made during the past five years. Sellers may not be aware of claims prior to their ownership. If Buyer wants further information, Broker recommends that, during Buyer's inspection contingency period, Buyer conduct his or her own investigation for past claims. Buyer may need to obtain Seller's consent in order to have access to certain investigation reports. If the Property is a condominium, or is located in a planned unit development or other common interest subdivision, Buyer and Seller are advised to determine if the individual unit is covered by the Homeowner Association Insurance. Broker recommends that Buyer consult Buyer's insurance agents during Buyer's inspection contingency period to determine the need, availability and possibility of securing any and all forms of other insurance or coverage or any conditions imposed by insurer as a requirement of issuing insurance. If Buyer takes possession prior to Close of Escrow or Seller remains in possession after Close of Escrow, whether for a limited or extended period of time, Broker recommends that Buyer and Seller each consult with their own insurance agent regarding insurance or coverage that could protect them in the transaction (including but not limited to: personal property, flood, earthquake, umbrella and renter's). Brokers do not have expertise in this area.

**27. CALIFORNIA FAIR PLAN:** Buyer and Seller are advised that insurance for certain hillside, oceanfront and brush properties may be available only from the California Fair Plan. This may increase the cost of insurance for such properties and coverage may be limited. Broker recommends that Buyer consult with Buyer's own insurance agent during Buyer's inspection contingency period regarding the availability of coverage under the California Fair Plan and the length of time it may take for processing of a California Fair Plan application. Brokers do not have expertise in this area.

**28. HISTORICAL DESIGNATION, COASTAL COMMISSION, ARCHITECTURAL, LANDSCAPE, AGRICULTURAL OR OPEN SPACE AND OTHER RESTRICTIONS ON BUILDINGS OR IMPROVEMENTS:** Buyer and Seller are advised that the Property may be: (i) designated as a historical landmark, (ii) protected by a historical conservancy, (iii) subject to an architectural or landscaping review process, (iv) within the jurisdiction of the California Coastal Commission or other government agency, or (v) subject to a contract preserving use of all or part of the Property for agriculture or open space. If the Property is so designated or within the jurisdiction of any such, or similar, government agency then there may be restrictions on Buyer's ability to develop, remove or trim trees or other landscaping, remodel, make improvements to and build on or rebuild the Property. Broker recommends that Buyer satisfy him/herself during Buyer's inspection contingency period if any of these issues are of concern to Buyer. Brokers do not have expertise in this area.

**29. 1915 BOND AND MELLO-ROOS COMMUNITY AND OTHER FACILITIES DISTRICTS:** Buyer and Seller are advised that the Property may be subject to an improvement bond assessment under the Improvement Bond Act of 1915 and/or a levy of a special tax pursuant to a Mello-Roos community facilities or other district. Seller is generally required to make a good faith effort to obtain a disclosure notice from any local agency collecting such taxes and deliver such notice to Buyers. Brokers do not have expertise in this area.

**30. HOMEOWNER ASSOCIATIONS AND COVENANTS, CONDITIONS AND RESTRICTIONS (CC&Rs):** Buyer and Seller are advised that if the Property is a condominium, or located in a planned unit development, or in a common interest subdivision there are typically restrictions on use of the Property and rules that must be followed. Restrictions and rules are commonly found in Declarations of Covenants, Conditions and Restrictions (CC&Rs) and other governing documents. Further there is likely to be a homeowner association (HOA) that has the authority to affect the Property and its use. Whether or not there is a HOA, the Property may still be subject to CC&Rs restricting use of the Property. The HOA typically has the authority to enforce the rules of the association, assess monetary payments (both regular monthly dues and special assessments) to provide for the upkeep and maintenance of the common areas, and enforce the rules and assessment obligations. If you fail to abide by the rules or pay monies owed to the HOA, the HOA may put a lien against your Property. The law requires the Seller to provide the Buyer with the CC&Rs and other governing documents, as well as a copy of the HOA's current financial statement and operating budget, among other documents. Buyer is advised to carefully review all HOA documents provided by Seller and the CC&Rs, if any, and satisfy him/herself regarding the use and restrictions of the Property, the amount of monthly dues and/or assessments, the adequacy of reserves, current and past insurance coverage and claims and the possibility of any legal action that may be taken by or against the HOA. The HOA may not have insurance or may not cover personal property belonging to the owner of the unit in the condominium, common interest or planned unit development. See paragraph 26 for further information regarding insurance. Brokers do not have expertise in this area.

**31. COMMUNITY ENHANCEMENT AND PRIVATE TRANSFER FEES:** Buyer and Seller are advised that some areas or communities may have enhancement fees or user-type fees, or private transfer fees, over and above any stated association fees. Private transfer fees: (A) may last for a fixed period of time or in perpetuity, (B) are typically calculated as a percentage of home's sales price, and (C) may have private parties, charitable organizations or interest-based groups as their recipients. Brokers do not have expertise in this area.



Copyright © 2004-2008, CALIFORNIA ASSOCIATION OF REALTORS®, INC.

SBSA REVISED 4/07 (PAGE 6 OF 10)

**STATEWIDE BUYER AND SELLER ADVISORY (SBSA PAGE 6 OF 10)**      Darzynkiewicz

DocuSign Envelope ID: 0CDE2645-9D78-4035-8074-375ACEEA05F0

*11540 Skislope Way*
Property Address: *Truckee, CA   96161*                                          Date: *April 22, 2010*

**32. GENERAL RECALL/DEFECTIVE PRODUCT/CLASS ACTION INFORMATION:** Buyer and Seller are advised that government entities and manufacturers may at any time issue recall notices and/or warnings about products that may be present in the Property, and that these notices or warnings can change. There is no single, all-inclusive source of information on product recalls, defective products or class actions; however, the U.S. Consumer Product Safety Commission (CPSC) maintains a website that contains useful information. If Buyer wants further information regarding the items listed below, Broker recommends that Buyer consult the CPSC website at http://www.cpsc.gov during Buyer's inspection contingency period. The following are examples of recall/defective products/class action information. The information is not exclusive. If Buyer wants further information, Broker recommends that Buyer contact the sources below. Brokers do not have expertise in this area and will not determine if any aspect of the Property is subject to a recall or is affected by a class action lawsuit. (NOTE: While the information below is believed to be current as of the revision date of this form, phone numbers and web addresses may change or be discontinued.)

**A. FURNACES:** Buyer is advised that the CPSC has issued a warning regarding certain gas-fired horizontal forced-air furnaces that present a substantial risk of fire. The furnaces in question were manufactured from 1983 to 1994 by Consolidated Industries and were marketed under many different brand names. Homes built before 1983 or after 1994 could still have the furnaces in question due to replacements or remodeling. If Buyer wants further information, Broker recommends that Buyer contact CPSC's hotline at (800) 638-2772.

**B. WHIRLPOOL MICROWAVE-HOOD COMBINATION:** Buyer is advised that Whirlpool Corporation has voluntarily recalled approximately 1.8 million microwave-hood combinations that have been known to overheat and catch fire. The units at issue are installed above ranges and are sold under the Whirlpool, KitchenAid and Kenmore brand names. If Buyer wants further information, Broker recommends that Buyer contact Whirlpool by phone at (800) 785-8897 or at its website, http://www.repair.whirlpool.com.

**C. ROOF TILES:** Buyer is advised that there is a class action lawsuit concerning certain fire free tiles and quantum panels manufactured and installed by RE-Con Building Products, Inc. from December 1993 to November 1997. If Buyer wants further information, Broker recommends that Buyer call (800) 966-3696 or view the website at http://www.firefreeclaims.com.

**D. FIRE SPRINKLER:** Buyer is advised that Central Sprinkler Company is recalling 35 million fire sprinkler heads that may be defective. If Buyer wants further information, Broker recommends that Buyer consult the CPSC website at http://www.cpsc.gov or Central Sprinkler Company at (866) 505-8553 or http://www.sprinklerreplacement.com.

**E. WATER HEATER:** Buyer is advised that certain water heaters manufactured by a variety of companies between 1993 and 1997 may be defective. If Buyer wants further information, Broker recommends that Buyer discuss the issue with an appropriate professional who can determine if the water heater on the Property is defective.

**F. ALUMINUM WIRING:** Buyer is advised that some properties in California are wired in whole or in part with aluminum wiring which was approved at the time of construction but subsequently determined to be a potential hazard. If Buyer wants further information, Broker recommends that Buyer discuss the issue with an appropriate professional who can determine if the wiring on the Property is defective.

**G. GALVANIZED, ABS, POLYBUTELENE AND COPPER PIPE:** Buyer is advised that galvanized steel water pipes may corrode and leak after several years and that ABS plastic drain waste and vent pipe may be subject to failure. Buyer is also advised that the adhesive used in the installation of polybutelene pipe has been subject to failure. Additionally, copper pipe installed in slabs may develop leaks as result of reaction to certain soils. If Buyer wants further information, Broker recommends that Buyer discuss the issue with an appropriate professional who can determine if the water pipes and drains on the Property are defective.

**H. WATER HEATER GAS CONTROL VALVES:** Buyer is advised that the CPSC in cooperation with Robertshaw Controls Company has announced a voluntary recall of approximately 178,000 gas control valves installed on water heaters manufactured between July 2005 and August 2005 with production date codes 5-31 through and

including 5-33 under brand names American Proline, Bradford White, GE, GSE, Hotpoint, Jetglas, John Wood, Lochinvar, Premire Plus, Powerflex, Rheem, Richmond, Ruud, Vanguard, Whirlpool and U.S. Craftsman. The CPSC reports that the screws on the valves could break allowing gas to escape from the valves. If Buyer wants further information, Broker recommends that Buyer consult the CPSC website at http://www.cpsc.gov or contact Robertshaw Controls at (888) 225-1071 or http://www.robertshaw.com.



Copyright © 2004-2008, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
SBSA REVISED 4/07 (PAGE 7 OF 10)

**STATEWIDE BUYER AND SELLER ADVISORY (SBSA PAGE 7 OF 10)**

Darzynkiewicz

DocuSign Envelope ID: 0CDE2645-9D78-4035-8074-375ACEEA05F0

*11540 Skislope Way*
Property Address: *Truckee, CA  96161* _____ Date: *April 22, 2010* _____

I. **ARC-FAULT CIRCUIT BREAKER:** Buyer is advised that the CPSC in cooperation with Schneider Electric has announced a voluntary recall of approximately 700,000 Square D Q® and Homeline® AFCI circuit breakers manufactured by Schneider Electric North American Operating Division. The recalled arc-fault interrupter circuit breakers are designed for use in 15 and 20-amp branch circuits; have a blue test button and were manufactured between March 2004 and September 2004. Tests show that these circuit breakers may not provide the arc-fault protection required by the 2001 California Electrical Code, Section 210-21. If Buyer wants further information, Broker recommends that Buyer consult the CPSC website at http://www.cpsc.gov or contact Schneider Electric at (877) 202-9064 or http://www.us.squared.com/recallafci.

**33. RENTAL PROPERTY RESTRICTIONS:** Buyer and Seller are advised that some cities and counties impose restrictions that limit the rent that can be charged to a tenant, the maximum number of tenants who can occupy the property and the right of a landlord to terminate a tenancy and the costs to do so. If Buyer wants further information, Broker recommends that Buyer investigate the issue with an appropriate government authority during Buyer's inspection contingency period. Brokers do not have expertise in this area.

**34. LAND LEASE:** Buyer and Seller are advised that certain developments are built on leased land. This means that: (i) Buyer does not own the land, (ii) the right to occupy the land will terminate at some time, (iii) the cost to lease the land may increase at some point in the future, and (iv) Buyer may not be able to obtain title insurance. If Buyer wants further information, Broker recommends that Buyer discuss the issue with an attorney or other appropriate professional. Brokers do not have expertise in this area.

**35. HOME WARRANTY:** Buyer and Seller are advised that Buyer and Seller can purchase home warranty plans covering certain standard systems of the Property both before and after Close of Escrow. Seller can obtain coverage for the Property during the listing period. For an additional premium, an upgraded policy providing additional coverage for air conditioning, pool and spa and other features can be purchased. Home warranties do not cover every aspect of the Property and may not cover inspections or upgrades for repairs required by state or federal laws. Broker recommends that Buyer review the policy for details. Brokers do not have expertise in this area.

**36. INTERNET ADVERTISING:** Buyer and Seller are advised that Broker may employ a service to provide a "virtual tour" or Internet marketing of the Property, permitting potential buyers to view the Property over the Internet. Neither the service provider nor Broker has control over who will obtain access to the service or what action such persons might take. Buyer and Seller are advised that Brokers have no control over how long the information concerning the Property will be available on the Internet. Brokers do not have expertise in this area.

**37. ESCROW FUNDS:** Buyer and Seller are advised that California Insurance Code section 12413.1 provides that escrow companies cannot disburse funds unless there are sufficient "good funds" to cover the disbursement. "Good funds" are defined as cash, wire transfers and cashiers' or certified checks drawn on California depositories. Escrow companies vary in their definitions of "good funds." Broker recommends that Buyer and Seller ask the escrow company regarding its treatment of "good funds." All drafts and out-of-state checks are subject to waiting periods and do not constitute "good funds" until the money is physically transferred to the escrow holder's account. Brokers do not have expertise in this area.

## 38. NOTICE OF YOUR "SUPPLEMENTAL" PROPERTY TAX BILL: Buyer and Seller are advised that pursuant to Civil Code § 1102.6(c), Seller or his or her agent is required to provide the following "Notice of Your 'Supplemental' Property Tax Bill" to the Buyer:

"California property tax law requires the Assessor to revalue real property at the time the ownership of property changes. Because of this law, you may receive one or two supplemental tax bills, depending on when your loan closes.

The supplemental tax bills are not mailed to your lender. If you have arranged for your property tax payments to be paid through an impound account, the supplemental tax bills will not be paid by your lender. It is your responsibility to pay these supplemental bills directly to the Tax Collector.
If you have any questions concerning this matter, please call your Tax Collector's Office."

Although the notice refers to loan closing as a trigger, it is actually the change of ownership which triggers this reassessment. Therefore, the Property can be reassessed even if there is no loan involved in the purchase of the Property. The purchase agreement may allocate supplemental tax bills received after the Close of Escrow to the Buyer. If Buyer wants further information concerning these matters, Broker recommends that Buyer discuss the issue with the County Assessor or Tax Collector. Brokers do not have expertise in this area.

Buyer's Initials ( RJD ) ( Kmp ) Seller's Initials ( ___ )
( gEw ) ( Kmpw )

Reviewed by _____ Date _____

Copyright © 2004-2008, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
**SBSA REVISED 4/07 (PAGE 8 OF 10)**

**STATEWIDE BUYER AND SELLER ADVISORY (SBSA PAGE 8 OF 10)**      Darzynkiewicz

11540 Skislope Way
Property Address: <u>Truckee, CA 96161</u>                                      Date: <u>April 22, 2010</u>

**39. NON CONFIDENTIALITY OF OFFERS:** Buyer is advised that Seller or Listing Agent may disclose the existence, terms, or conditions of Buyer's offer unless all parties and their agent have signed a written confidentiality agreement. Whether any such information is actually disclosed depends on many factors, such as current market conditions, the prevailing practice in the real estate community, the Listing Agent's marketing strategy and the instructions of the Seller.

**40. FIRPTA/CALIFORNIA WITHHOLDING:** Buyer and Seller are advised that: (i) Internal Revenue Code section 1445 requires a Buyer to withhold and remit to the Internal Revenue Service 10% of the purchase price if Seller is a non-resident alien, unless an exemption applies. Seller may avoid withholding by providing Buyer a statement of non-foreign status. The statement must be signed by Seller under penalty of perjury and include Seller's tax identification number. Buyer can also avoid the federal withholding requirement if the property price is $300,000 or less and the Buyer signs an affidavit stating Buyer intends to occupy the property as a principal residence. (ii) California Revenue and Taxation Code Section 18662 requires that a Buyer withhold and remit to the California Franchise Tax Board 3 1/3% of the purchase price unless the Seller signs an affidavit that the property was the Seller's (or the decedent's if a trust or probate sale) principal residence or that the sales price is $100,000 or less or another exemption applies. Exemptions from withholding also apply to legal entities such as corporations, LLCs, and partnerships. Brokers cannot give tax advice. Broker recommends that Buyer and Seller seek advice from a CPA, attorney or taxing authority. Brokers do not have expertise in this area.

**41. LIQUIDATED DAMAGES:** Buyer and Seller are advised that a liquidated damages clause is a provision Buyer and Seller can use to agree in advance to the amount of damages that a seller will receive if a buyer breaches the agreement. The clause usually provides that a seller will retain a Buyer's initial deposit paid if the Buyer breaches the agreement, and generally must be separately initialed by both parties to be enforceable. For any additional deposits to be covered by the liquidated damages clause, there generally must be another separately signed or initialed agreement. However, if the Property contains from 1 to 4 units, one of which the Buyer intends to occupy, California Civil Code Section 1675 limits the amount of the deposit subject to liquidated damages to 3% of the purchase price. Even though both parties have agreed to a liquidated damages clause, an escrow company will usually require either a judge's or arbitrator's decision or instructions signed by both parties in order to release the Buyer's deposit to the Seller. Buyers and Sellers must decide on their own, or with the advice of legal counsel, whether to agree to a liquidated damages clause. Brokers do not have expertise in this area.

**42. MEDIATION:** Buyer and Seller are advised that mediation is a process in which the parties hire a neutral person to facilitate discussion and negotiation between the parties with the goal of helping them reach a settlement of their dispute. The parties generally share in the cost of this confidential, non-binding negotiation. If no agreement is reached, either party can pursue further legal action. Under C.A.R. Form RPA-CA; (i) the parties must mediate any dispute arising out of their agreement (with a few limited exceptions, such as matters within the jurisdiction of a small claims court) before they resort to arbitration or court, and (ii) if a party proceeds to arbitration or court without first attempting to mediate the dispute, that party risks losing the right to recover attorney fees even if he or she prevails.

**43. ARBITRATION:** Buyer and Seller are advised that arbitration is a process by which the disputing parties hire a neutral person to render a decision. Generally, arbitration is faster and less expensive than resolving disputes by litigating in court. The rules are usually less formal than in court, and it is a private process not on the public record. By agreeing to arbitration the parties give up the right to a jury trial and to appeal. Arbitration decisions have been upheld even when arbitrators have made a mistake as to the law or the facts. If the parties agree to arbitration, then any dispute arising out of their agreement (with a few limited exceptions) must be submitted to binding arbitration. Buyer and Seller must weigh the benefits of a potentially quicker and less expensive arbitration against giving up the right to a jury trial and the right to appeal. Brokers cannot give legal advice regarding these matters. Buyers and Sellers must decide on their own, or with the advice of legal counsel, whether to agree to arbitration. Brokers do not have expertise in this area.

**44. MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at www.meganslaw.ca.gov. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Brokers are required to check this website. If Buyer wants further information, Broker recommends that Buyer obtain information from this website during Buyer's inspection contingency period. Brokers do not have expertise in this area.)

Buyer's Initials [RD] [Kmg] [GEW] [KmgW]
Seller's Initials [CmT]

Reviewed by _____ Date _____

Copyright © 2004-2008, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
**SBSA 4/07 (PAGE 9 OF 10)**

**STATEWIDE BUYER AND SELLER ADVISORY (SBSA PAGE 9 OF 10)**

Darzynkiewicz

Property Address: *11540 Skislope Way* *Truckee, CA  96161*       Date: *April 22, 2010*

## 45. LOCAL ADDENDA (IF CHECKED):
The following local disclosures or addenda are attached:

A. ☐ _____
B. ☐ _____
C. ☐ _____
D. ☐ _____

---

Buyer and Seller acknowledge and agree that Broker: **(i)** does not decide what price Buyer should pay or Seller should accept; **(ii)** does not guarantee the condition of the Property; **(iii)** does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; **(iv)** does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; **(v)** shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Broker; **(vi)** shall not be responsible for inspecting public records or permits concerning the title or use of Property; **(vii)** shall not be responsible for identifying the location of boundary lines or other items affecting title; **(viii)** shall not be responsible for verifying square footage, representations of others or information contained in investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; **(ix)** shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and **(x)** shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

---

**By signing below, Buyer and Seller acknowledge that each has read, understands and received a copy of this Advisory. Buyer and Seller are encouraged to read it carefully.**

Date 4/22/2010
BUYER *Robert J. Darzynkiewicz*  *Kristi M. Darzynkiewicz*
DocuSigned By: Robert J. Darzynkiewicz  DocuSigned By: Kristi M. Darzynkiewicz
*Robert & Kristi Darzynkiewicz*
(Print name)

(Address)

Date 4/28/2010
SELLER *Thomas May, Trustee*
DocuSigned By: Thomas May Trustee

(Print name)

(Address)

Date 4/22/2010
BUYER *Glenn E. Whitlow*  *Kathleen M. Whitlow*
DocuSigned By: Glenn E. Whitlow  DocuSigned By: Kathleen M. Whitlow
*Glenn & Kathleen Whitlow*
(Print name)

Date _____
SELLER _____

(Print name)

(Address)

Real Estate Broker (Selling Firm) *Pacific Crest Properties*       DRE Lic. # *998-704*
By *Dionne Pope*
DocuSigned By: Dionne Pope
*Dionne Pope* DRE Lic.# *01476057*       Date 4/22/2010
Address *17400 Northwoods Blvd* City *Truckee*       State *CA*  Zip *96161*
Telephone _____ Fax *(530)587-2091*  E-mail *dionne@visitpcp.com*

Real Estate Broker (Listing Firm) *Dickson Realty*       DRE Lic. # 1417710
By *Kane Schaller*
DocuSigned By: Kane Schaller
*Kane Schaller* DRE Lic. # 1316059       Date 4/28/2010
Address _____ City _____       State _____ Zip _____
Telephone _____ Fax _____  E-mail _____

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

EQUAL HOUSING OPPORTUNITY

**STATEWIDE BUYER AND SELLER ADVISORY (SBSA PAGE 10 OF 10)**       Darzynkiewicz

DocuSign Envelope ID: 0CDE2645-9D78-4035-8074-375ACEEA05F0



# MARKET CONDITIONS ADVISORY
### (C.A.R. Form MCA, 11/08)



**A. MARKET CONDITIONS:** Real estate markets are cyclical and can change over time. It is impossible to predict future market conditions with accuracy. In a competitive or "hot" real estate market, there are generally more buyers than sellers. This will often lead to multiple buyers competing for the same property. As a result, in order to make their offers more attractive, some buyers may offer more than originally planned or eliminate certain contingencies in their offers. In a less competitive or "cool" market there are generally more sellers than buyers, often causing real estate prices to level off or drop, sometimes precipitously. The sales prices of homes being sold as foreclosures and short sales are difficult to anticipate and can affect the value of other homes in the area. Brokers, appraisers, sellers and buyers take these "distressed" property sales and listings into consideration when valuing property. In light of the real estate market's cyclical nature it is important that buyers understand the potential for little or no appreciation in value, or the actual loss in value, of the property they purchase. This Advisory discusses some of the potential risks inherent in changing market conditions.

**B. OFFERING PRICE:** AS A BUYER, YOU ARE RESPONSIBLE FOR DETERMINING THE PRICE YOU WANT TO OFFER FOR A PROPERTY. Although Brokers may provide you with comparable sales data, generally from information published in the local multiple listing service, you should know that the reporting of this data is often delayed and prices may change, up or down, faster than reported sales indicate. All buyers should be sure they are comfortable with the price they are offering or the price they are accepting in a counter offer. You should be aware of and think about the following: **(i)** If your offer is accepted, the property's value may not increase and may even decrease. **(ii)** If your offer is accepted, you may have "buyer's remorse" that you paid too much. **(iii)** If your offer is rejected there can be no guarantee that you will find a similar property at the same price. **(iv)** If your offer is rejected, you may not be satisfied that the amount you offered was right for you. Only you can determine that your offer was reasonable and prudent in light of the property and your circumstances.

**C. NON-CONTINGENT OFFERS:** Most residential purchase agreements contain contingencies allowing a Buyer within a specified period of time to cancel a purchase if: **(i)** the Buyer cannot obtain a loan; **(ii)** is dissatisfied with the property's condition after an inspection;or **(iii)** if the property does not appraise at a certain value. To make their offers more attractive, buyers will sometimes write offers with few or no contingencies or offer to remove contingencies within a short period of time. In a "hot" market, sellers will sometimes insist that buyers write offers with no contingencies. Broker recommends that buyers do not write non-contingent offers and if you do so, you are acting against Broker's advice. However, if you do write a non-contingent offer these are some of the contractual rights you may be giving up:

1. LOAN CONTINGENCY: If you give up your loan contingency, and you cannot obtain a loan, whether through your fault or the fault of your lender, and as a result, you do not or cannot purchase the property, you may legally be in default under the contract and required to pay damages or forfeit your deposit to the seller.

2. APPRAISAL CONTINGENCY: If you give up your appraisal contingency, and if your lender's (or your own) appraiser or review appraiser does not believe the property is worth what you have agreed to pay for it or your lender will not loan the full amount needed for the purchase because of a low appraisal and as a result, you do not or cannot purchase the property, you may legally be in default under the contract and required to pay damages or forfeit your deposit to the seller. The seller is not obligated to reduce the purchase price to match the appraised value.

3. INSPECTION CONTINGENCY: If you give up your inspection contingency, and you disapprove of the condition and as a result, you do not or cannot purchase the property, you may legally be in default under the contract and required to pay damages or forfeit your deposit to the seller. However, even if you give up your inspection contingency, the Seller may still be obligated to provide you with certain disclosures and information addressing the condition of the property. In some cases, once you receive that information the law gives you an independent right to cancel for a limited period of time.

There is inherent risk in writing a non-contingent offer. Only you, after careful consultation and deliberation with your attorney, accountant, or financial advisor can decide how much risk you are willing to take. IT IS YOUR DECISION ALONE AND CANNOT BE MADE BY YOUR BROKER OR REAL ESTATE AGENT.

**D. BROKER RECOMMENDATIONS:** Broker recommends that you do not write a non-contingent offer, even if you are planning on paying all cash for the property. If you intend to write a non-contingent offer, Broker recommends that, prior to writing the offer, you: **(i)** review all available seller reports, disclosures, information and documents; **(ii)** have an appropriate professional inspect the property (even if it is being sold "as is" in its present condition); and **(iii)** carefully assess your financial position, and risk with your attorney, accountant or financial advisor.

Buyer acknowledges Buyer has read, understands and has received a copy of this Market Condition Advisory.

Buyer _Robert J. Darzynkiewicz_ Kristi M. Darzynkiewicz **Robert & Kristi Darzynkiewicz** Date _4/22/2010_

Buyer _Glenn E. Whitlow_ Kathleen M. Whitlow **Glenn & Kathleen Whitlow** Date _4/22/2010_

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form by any means, including facsimile or computerized formats. Copyright © 2008, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

| Reviewed by _____ | Date _____ |

**MCA 11/08 (PAGE 1 OF 1)**

## MARKET CONDITIONS ADVISORY (MCA PAGE 1 OF 1)

| | | | |
|---|---|---|---|
| Agent: Dionne Pope | Phone: 530-582-9775 | Fax: 530.587-2096 | Prepared using WINForms® software |
| Broker: Pacific Crest Properties 17400 Northwoods Blvd Truckee, CA 96161 | | | |

**Exhibit 1B---Accepted and Signed Counter Offer, & Deposit  2 Pages**

DocuSign Envelope ID: A0D9FC8F-A0D2-407D-9D5B-C966864B9887    *Exhibit 1B*



CALIFORNIA
ASSOCIATION
OF REALTORS®

# COUNTER OFFER No. ___TWO___ 2 PAGES
**For use by Seller or Buyer. May be used for Multiple Counter Offer.**
(C.A.R. Form CO, Revised 10/04)

Date __April 29, 2010__, at _____ __Truckee__ _____, California.

This is a counter offer to the: ☐ California Residential Purchase Agreement, ☒ Counter Offer, or ☐ Other _____ ("Offer"),

dated __April 22, 2010__, on property known as __11540 Skislope Way__ ("Property"),

between __Robert & Kristi Darzynkiewicz, Glenn & Kathleen Whitlow__ ("Buyer") and

__Thomas E. May, Trustee , Estate of Linda Curry__ ("Seller").

1. **TERMS:** The terms and conditions of the above referenced document are **accepted subject to the following:**

   A. Paragraphs in the Offer that require initials by all parties, but are not initialed by all parties, are excluded from the final agreement unless specifically referenced for inclusion in paragraph 1C of this or another Counter Offer.

   B. Unless otherwise agreed in writing, down payment and loan amount(s) will be adjusted in the same proportion as in the original Offer.

   C. __Purchase Price to be $48,336 (Forty Eight Thousand Three Hundred Thirty Six Dollars)__

   _____
   _____
   _____
   _____
   _____

   D. The following attached supplements are incorporated into this Counter Offer: ☐ Addendum No. _____
      ☐ _____  ☐ _____

2. **RIGHT TO ACCEPT OTHER OFFERS:** Seller has the right to continue to offer the Property for sale or for other transaction, and to accept any other offer at any time prior to notification of acceptance, as described in paragraph 3. If this is a Seller Counter Offer, Seller's acceptance of another offer prior to Buyer's acceptance and communication of notification of this Counter Offer, shall revoke this Counter Offer.

3. **EXPIRATION:** This Counter Offer shall be deemed revoked and the deposits, if any, shall be returned unless this Counter Offer is signed by the Buyer or Seller to whom it is sent and a Copy of the signed Counter Offer is personally received by the person making this Counter Offer or __Dionne Pope__

   who is authorized to receive it, by 5:00 PM on the third Day after this Counter Offer is made or, (if checked) by ☐ _____
   (date), at _____ ☐ AM ☐ PM. This Counter Offer may be executed in counterparts.

4. ☐ **(If checked:) MULTIPLE COUNTER OFFER:** Seller is making a Counter Offer(s) to another prospective buyer(s) on terms that may or may not be the same as in this Counter Offer. Acceptance of this Counter Offer by Buyer shall **not** be binding unless and until it is subsequently re-Signed by Seller in paragraph 7 below and a Copy of the Counter Offer Signed in paragraph 7 is personally received by Buyer or by _____, who is authorized to receive it, by 5:00PM
   on the third Day after this Counter Offer is made or, (if checked) by ☐ _____ (date), at _____ ☐ AM ☐ PM.
   Prior to the completion of all of these events, Buyer and Seller shall have no duties or obligations for the purchase or sale of the Property.

5. **OFFER:** ☒ **BUYER OR** ☐ **SELLER MAKES THIS COUNTER OFFER ON THE TERMS ABOVE AND ACKNOWLEDGES RECEIPT OF A COPY.**
   _Robert J. Darzynkiewicz_  _Kristi M. Darzynkiewicz_   Date _____
   Robert J. Darzynkiewicz By: Keijo M Darzynkiewicz   __4/29/2010__
   _Glenn C. Whitlow_   _Kathleen M. Whitlow_   Date _____
   Glenn & Kathleen Whitlow   DocuSigned By Kathleen M Whitlow

6. **ACCEPTANCE: I/WE** accept the above Counter Offer **(If checked** ☐ **SUBJECT TO THE ATTACHED COUNTER OFFER)** and acknowledge
   receipt of a Copy.
   _Thomas May, Trustee_   Date _____   Time _____ ☐ AM ☐ PM
   Thomas May, Trustee   Date __5/1/2010__   Time _____ ☐ AM ☐ PM

7. **MULTIPLE COUNTER OFFER SIGNATURE LINE:** By signing below, Seller accepts this Multiple Counter Offer.
   NOTE TO SELLER: Do **NOT** sign in this box until after Buyer signs in paragraph 6. (Paragraph 7 applies only if paragraph 4 is checked.)
   _____ Date _____ Time _____ ☐ AM ☐ PM
   _____ Date _____ Time _____ ☐ AM ☐ PM

8. ( ___ / ___ ) (Initials) **Confirmation of Acceptance:** A Copy of Signed Acceptance was personally received by the maker of the Counter Offer, or that person's authorized agent as specified in paragraph 3 (or, if this is a Multiple Counter Offer, the Buyer or Buyer's authorized agent as specified in paragraph 4) on (date) _____, at _____ ☐ AM ☐ PM. **A binding Agreement** is created when a Copy of Signed Acceptance is personally received by the maker of the Counter Offer, or that person's authorized agent (or, if this is a Multiple Counter Offer, the Buyer or Buyer's authorized agent) whether or not confirmed in this document. Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has occurred.

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1986-2004, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Reviewed by _____
Broker or Designee _____ Date _____

EQUAL HOUSING
OPPORTUNITY

CO REVISED 10/04 (PAGE 1 OF 1)

**COUNTER OFFER (CO PAGE 1 OF 1)**

| Agent: Dionne Pope | Phone: 530-582-9775 | Fax: 530.587-2096 | Prepared using zipForm® software |
|---|---|---|---|
| Broker: Pacific Crest Properties 17400 Northwoods Blvd Truckee, CA 96161 | | | |

# Fidelity National Title Company of California

**FNT Nevada – Truckee**
**RECEIPT FOR FUNDS**

| Cost Center | Profit Center | Escrow No. | Title No. | Date | Instrument No. |
|---|---|---|---|---|---|
| 0929 | 0002 | 0000502880 | 0000502880 | 5/3/2010 | 0201007047 |

| Bank Code | Bank Name |
|---|---|
| 0001 | Bank of America, N.A. |

Amount    $ 2,500.00
Received From: Robert J. Darzynkiewicz
Property Address: 11540 Skislope Way Truckee, CA 96161
for the account of: Buyer/Borrower [ X ]   Selling Broker [ ]   Listing Broker [ ]   Seller [ ]
Insert Name: Robert J. Darzynkiewicz

Cashiers Check [ ]   Draft [ ]   Inter Company Draft [ ]   Money Order [ ]   Personal Check [ X ]
** CASH [ ]

| Maker of Check: | Check #: | Date of Check: |
|---|---|---|
| robert j & kristi M darzynkiewicz | 2027 | 5/3/2010 |
| Bank Drawn on: wells fargo | ABA# 121042882 | |

to be applied in accordance with instructions of: BUYER/BORROWER [ X ]   SELLER [ ]   LENDER [ ]

OTHER [ ] _____

Received the above funds:                             ** CASH DEPOSIT VERIFIED

Date: _____    By: _____    By: _____
                               Linda Gayton

## Instrument No. 0201007047

The parties to this escrow acknowledge that the maintenance of escrow accounts with some depository institutions may result in Escrow Holder or its affiliates being provided with bank services, accommodations or other benefits by the depository institution. Escrow Holder or its affiliates also may elect to enter into other business transactions with or obtain loans for _____ the depository institution. _____ or its
affiliates shall _____ other benefits.

NOTICE OF C

You have the
1. Request
2. The chan
3. As an ex
Interest
4. To estab
your esc

| | |
|---|---|
| Kristi M. Darzynkiewicz | 2027 |
| Robert J. Darzynkiewicz | 11-4288/1210 |
| 16151 Woodbridge Court | |
| Truckee, CA 96161 | May 3rd 2010 |

Pay to the Order of _Fidelity National Title_   $ 2,500.00

_Twenty - five Chundred no/100_ ——————— Dollars

Wells Fargo Bank, N.A.
11282 Donner Pass Road
Truckee, CA 96161

For_____

⑆121042882⑆ 334240 2975⑈ 2027

f 4% is $3.33.

nd return it to

(receipt)

**Exhibit 2---Settlement Statement 3 pages and Title Prelim. 21 pages**

| A. U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT | | B. TYPE OF LOAN | | | OMB No. 2502-0265 |
|---|---|---|---|---|---|
| SETTLEMENT STATEMENT | | 1. [ ] FHA 2. [ ] FmHA 3. [ ] Conv. Unins | | | |
| | | 4. [ ] VA 5. [ ] Conv. Ins | | | |
| **Fidelity National Title Company of California** | | 6. ESCROW NUMBER: 10-502880-LG | | 7. LOAN NUMBER: | |
| | | 8. MORTGAGE INSURANCE CASE NUMBER: | | | |

NOTE: THIS FORM IS FURNISHED TO GIVE YOU A STATEMENT OF THE ACTUAL SETTLEMENT COSTS. AMOUNTS PAID TO AND BY THE SETTLEMENT AGENT ARE SHOWN. ITEMS MARKED "(P.O.C.)" WERE PAID OUTSIDE OF THE CLOSING: THEY ARE SHOWN HERE FOR INFORMATIONAL PURPOSES AND ARE NOT INCLUDED IN THE TOTALS.

| D. NAME & ADDRESS OF BORROWER: | E. NAME & ADDRESS OF SELLER: Linda Curry PO BOX 3419 Truckee, CA 96160 | F. NAME & ADDRESS OF LENDER: |
|---|---|---|
| G. PROPERTY LOCATION: 11540 Skislope Way Truckee, California 96161 | H. SETTLEMENT AGENT: Fidelity National Title Company of California PLACE OF SETTLEMENT: 10825 Pioneer Trail, Suite 106A Truckee, CA 96161 | I. SETTLEMENT DATE: June 10, 2010 |

| J. SUMMARY OF BORROWER'S TRANSACTIONS | | K. SUMMARY OF SELLER'S TRANSACTIONS | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER** | | **400. GROSS AMOUNT DUE TO SELLER** | |
| 101. Contract Sales Price | 48,336.00 | 401. Contract Sales Price | 48,336.00 |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement charges to borrower (line 1400) | 770.00 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| Adjustments: Items Paid by Seller in Advance | | Adjustments: Items Paid by Seller in Advance | |
| 106. City/Town Taxes | | 406. City/Town Taxes | |
| 107. UnPd County Taxes fr 6/10/2010 to 7/1/2010 | 81.57 | 407. UnPd County Taxes fr 6/10/2010 to 7/1/2010 | 81.57 |
| 108. Assessments | | 408. Assessments | |
| 109. HOA Dues fr 6/10/2010 to 1/1/2011 | 725.83 | 409. HOA Dues fr 6/10/2010 to 1/1/2011 | 725.83 |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 113. | | 413. | |
| 114. | | 414. | |
| 115. | | 415. | |
| 116. | | 416. | |
| 117. | | 417. | |
| 118. | | 418. | |
| 120. Gross Amount Due From Borrower | 49,913.40 | 420. Gross Amount Due To Seller | 49,143.40 |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER** | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | | 502. Settlement charges to seller (line 1400) | 10,099.76 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff to Short Sale Payment | |
| 205. | | 505. | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments: Items Unpaid by Seller | | Adjustments: Items Unpaid by Seller | |
| 210. City/Town Taxes | | 510. City/Town Taxes | |
| 211. County Taxes | | 511. County Taxes | |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. Total Paid By/For Borrower | | 520. Total Reductions in Amount Due Seller | 10,099.76 |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER** | | **600. CASH AT SETTLEMENT TO/FROM SELLER** | |
| 301. Gross amount due from borrower (line 120) | 49,913.40 | 601. Gross amount due to seller (line 420) | 49,143.40 |
| 302. Less amounts paid by/for borrower (line 220) | | 602. Less reduction in amount due seller (line 520) | 10,099.76 |
| 303. CASH (XX FROM) ( TO) BORROWER | 49,913.40 | 603. CASH (XX TO) ( FROM) SELLER | 39,043.64 |

*1/3*

| L. SETTLEMENT CHARGES     Escrow: 10-502880-LG  Locate: CAFNT0929-0929-0002-0000502880 | | |
|---|---|---|
| 700. TOTAL SALES/BROKER'S COMMISSION based on price $48,336.00 @ 6.00% = $2,900.16 | **PAID FROM BORROWER'S FUNDS AT SETTLEMENT** | **PAID FROM SELLER'S FUNDS AT SETTLEMENT** |
| Division of Commission (line 700) as follows: | | |
| 701. $ - Dickson Realty | | |
| 702. | | |
| 703. Commission paid at Settlement | | |
| 704. Commissions - Dickson Realty | | 2,900.16 |
| 705. | | |
| 800. ITEMS PAYABLE IN CONNECTION WITH LOAN | | |
| 801. Loan Origination Fee | | |
| 802. Loan Discount | | |
| 803. Appraisal Fee | | |
| 804. Credit Report | | |
| 805. Lender's Inspection Fee | | |
| 806. Mortgage Insurance Application Fee | | |
| 807. Assumption Fee | | |
| 808. | | |
| 809. | | |
| 810. | | |
| 811. | | |
| 812. | | |
| 813. | | |
| 814. | | |
| 900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE | | |
| 901. Interest | | |
| 902. Mortgage insurance Premium | | |
| 903. Hazard Insurance Premium | | |
| 904. | | |
| 905. | | |
| 1000. RESERVES DEPOSITED WITH LENDER | | |
| 1001. Hazard Insurance        months @ $        per month | | |
| 1002. Mortgage Insurance      months @ $        per month | | |
| 1003. City property taxes     months @ $        per month | | |
| 1004. County property taxes   months @ $        per month | | |
| 1005. Annual assessments      months @ $        per month | | |
| 1006. | | |
| 1007. | | |
| 1008. | | |
| 1100. ESCROW AND TITLE CHARGES | | |
| 1101. Settlement or Closing Fee to Fidelity National Title | 250.00 | 250.00 |
| 1102. Abstract or title search | | |
| 1103. Title examination | | |
| 1104. Title insurance binder | | |
| 1105. Document preparation | | |
| 1106. Notary fees | | |
| 1107. Draw Deed | | 50.00 |
| 1108. Title insurance  Fidelity National Title Insurance Company | 200.00 | 200.00 |
| 1109. Lender's coverage | | |
| 1110. Owner's coverage - 01-O-CLTA Standard - 1990 for $48,336.00; $400.00 | | |
| 1111. Overnight Delivery Fee | 25.00 | 25.00 |
| 1112. | | |
| 1113. | | |
| 1114. | | |
| 1115. | | |
| 1116. | | |
| 1200. GOVERNMENT RECORDING AND TRANSFER CHARGES | | |
| 1201. Recording Fees: Deed $30.00   Mortgage $0.00   Release $0.00 | 30.00 | |
| 1202. City/county tax/stamps: $53.35          Mortgage $ | | 53.35 |
| 1203. State tax/stamps: Deed $    Mortgage $ | | |
| 1204. | | |
| 1205. | | |
| 1300. ADDITIONAL SETTLEMENT CHARGES | | |
| 1301. Pest Inspection to Estimate | | |
| 1302. Home Protection Plan to Estimate | | |
| 1303. Notary to Estimate | | 40.00 |
| 1304. 1st half & Penalty 44-440-61-000 to Nevada County Tax Collector | | 801.21 |
| 1305. Tax Default payment 5/31/10 44-440-61-000 to Nevada County Tax Collector | | 2,855.09 |
| 1306. Assessments Delinquent Assessments & Lien to Tahoe Donner Home Owners Association | | 178.00 |
| 1307. Transfer Fee to Tahoe Donner Home Owners Association | 265.00 | |
| 1308. 2nd half & Penalty 44-460-61-000 to Nevada County Tax Collector | | 811.21 |
| 1309. Dues for 2010 to Tahoe Donner Home Owners Association | | 1,300.00 |
| 1310. Other Charges - See Attached | | 635.74 |
| 1400. TOTAL SETTLEMENT CHARGES (enter on lines 103, Section J and 502, Section K) | 770.00 | 10,099.76 |



Print Date: May 3, 2010 12:51 PM
Escrow No.: 10-502880-LG
Locate No.: CAFNT0929-0929-0002-0000502880
Settlement Agent: Fidelity National Title Company of California

Page 3

**ATTACHMENT TO RESPA**

|  | BORROWER | SELLER |
|---|---|---|
| **Charges FROM LINE NO. 1310** | | |
| Lien charges to Tahoe Donner Home Owners Association | | 175.00 |
| Estimate: 1% interest accrues mthly to Tahoe Donner Home Owners Association | | 60.74 |
| 2009 Annual assessment prorated 4 mos 4/31/09 to Tahoe Donner Home Owners Association | | 400.00 |
| **TOTAL CHARGES 1310** | | **635.74** |

3/3



*Exhibit 2*

# Fidelity National Title Company
## OF CALIFORNIA

**PRELIMINARY REPORT** *( 21 Pages )*

*In response to the application for a policy of title insurance referenced herein, **Fidelity National Title Company of California** hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a policy or policies of title insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an exception herein or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations or Conditions of said policy forms.*

*The printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said policy or policies are set forth in Attachment One. The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. Limitations on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Attachment One. Copies of the policy forms should be read. They are available from the office which issued this report.*

*This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.*

*The policy(s) of title insurance to be issued hereunder will be policy(s) of Fidelity National Title Insurance Company, a California corporation.*

**Please read the exceptions shown or referred to herein and the exceptions and exclusions set forth in Attachment One of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered.**

**It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects and encumbrances affecting title to the land.**

FIDELITY NATIONAL TITLE COMPANY OF CALIFORNIA

BY _____ President

ATTEST

_____ Secretary

Countersigned



# Fidelity National Title Company
### OF CALIFORNIA

***ISSUING OFFICE:*** 3075 Prospect Park Drive, Suite 130 • Rancho Cordova, CA 95670

***FOR SETTLEMENT INQUIRIES, CONTACT:*** Fidelity National Title Company of California - Truckee
10825 Pioneer Trail, Suite 106A • Truckee, CA 96161
530 587-3845 • FAX 530 587-2947

## PRELIMINARY REPORT

**Amended**

Title Officer:  Jeff VanValer
Escrow Officer:  Linda Gayton
Escrow No.:  10-**502880**-LG

Title No.:  10-**502880**-B-JV
Locate No.:  CAFNT0929-0929-0002-0000502880

TO:     Dickson Realty
11500 Donner Pass Road
Truckee, CA  96161

ATTN:  Kane Schaller

SHORT TERM RATE:  No

**PROPERTY ADDRESS:**   11540 Skislope Way, Truckee, California

**EFFECTIVE DATE: April 9, 2010, 07:30 A.M.**

The form of policy or policies of title insurance contemplated by this report is:

CLTA Standard Coverage Policy - 1990

1.     THE ESTATE OR INTEREST IN THE LAND HEREINAFTER DESCRIBED OR REFERRED TO COVERED BY
THIS REPORT IS:

A Fee

2.     TITLE TO SAID ESTATE OR INTEREST AT THE DATE HEREOF IS VESTED IN:

**Linda Curry, an unmarried woman**

3.     THE LAND REFERRED TO IN THIS REPORT IS DESCRIBED AS FOLLOWS:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

SP\RL  01/20/2010



## LEGAL DESCRIPTION

### EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE TOWN ON TRUCKEE, COUNTY OF NEVADA, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

Lot 40 as shown on the Map of "Tahoe Donner Unit No. 5" filed in the Office of the Nevada County Recorder on August 23, 1972 in Book 4 of Subdivisions, Page 36.

APN: 44-440-61-000

**AT THE DATE HEREOF, ITEMS TO BE CONSIDERED AND EXCEPTIONS TO COVERAGE IN ADDITION TO THE PRINTED EXCEPTIONS AND EXCLUSIONS IN SAID POLICY FORM WOULD BE AS FOLLOWS:**

1.  **Property taxes**, which are a lien not yet due and payable, including any assessments collected with taxes to be levied for the fiscal year 2010-2011.

2.  **Property taxes**, including any personal property taxes and any assessments collected with taxes, for the fiscal year 2009-2010, Assessor's Parcel Number 44-440-61-000.

    | | |
    |---|---|
    | Code Area Number: | 3-001 |
    | 1st Installment: | $801.21 Delinquent |
    | 2nd Installment: | $811.21 Delinquent |
    | Land: | $112,001.00 |
    | Improvements: | $ |
    | Exemption: | |
    | Personal Property: | |
    | Bill No.: | 44352 |

3.  **Said property has been declared tax defaulted** for non-payment of delinquent taxes for the fiscal year(s) 2008-2009

    | | |
    |---|---|
    | APN: | 44-440-61-000 |
    | Default No.: | 43962 |
    | Default Date: | June 30, 2009 |

    Amounts to redeem for the above stated fiscal year (and subsequent years, if any) are:

    | | |
    |---|---|
    | Amount: | $2,823.14 |
    | By: | April 30, 2010 |
    | Amount: | $2,855.09 |
    | By: | May 31, 2010 |

4.  **The lien of supplemental taxes**, if any, assessed pursuant to the provisions of Chapter 3.5 (Commencing with Section 75) of the Revenue and Taxation code of the State of California.

5.  **Easement(s)** for the purpose(s) shown below and rights incidental thereto as delineated or as offered for dedication, on the map of said tract.

    | | |
    |---|---|
    | Purpose: | Public utilities |
    | Affects: | Northerly 10 feet, Southerly 15 feet and 5 feet along side lot lines |

    | | |
    |---|---|
    | Purpose: | Drainage |
    | Affects: | Northerly 10 feet |

    | | |
    |---|---|
    | Purpose: | Snow storage easement |
    | Affects: | Northerly 20 feet |

Purpose:    Access
Affects:    Northerly 40 feet

A Resolution of the Town Council of the Town of Truckee for Abandonment of an Access Easement recorded October 27, 2003, Instrument No. 2003-0057544, Official Records.

6.   **Covenants, conditions and restrictions** in the declaration of restrictions but omitting any covenants or restrictions, if any, including, but not limited to those based upon race, color, religion, sex, sexual orientation, familial status, marital status, disability, handicap, national origin, ancestry, or source of income, as set forth in applicable state or federal laws, except to the extent that said covenant or restriction is permitted by applicable law.

  Recorded:    June 17, 1992, Instrument No. 92-01670, of Official Records

  Said covenants, conditions and restrictions provide that a violation thereof shall not defeat the lien of any mortgage or deed of trust made in good faith and for value.

  **Liens and charges** for upkeep and maintenance as set forth in the above mentioned declaration, payable to Tahoe Donner Homeowners Association.

7.   **Notice of Delinquent Assessments and Lien** payable to the Owners' Association pursuant to the declaration herein above referred to under item 6.

  Amount:    $3,340.61
  Owners Assoc.  Tahoe Donner Association
  Recorded:    August 5, 2009, Instrument No. 20090021299, of Official Records

8.   **Please be advised** that our search did not disclose any open Deeds of Trust of record. If you should have knowledge of any outstanding obligation, please contact your Title Officer immediately for further review.

### END OF ITEMS

**Note 1.**    The current owner does NOT qualify for the $20.00 discount pursuant to the coordinated stipulated judgments entered in actions filed by both the Attorney General and private class action plaintiffs for the herein described property.

**Note 2.**    The only deeds affecting said land, which recorded within twenty-four (24) months of the date of this report, as are follows:

  Grantor:    Daniel Stone an unmarried man
  Grantee:    Linda Curry an unmarried man
  Recorded:    November 13, 2009, Instrument No. 20090030411, of Official Records

**Note 3.**     If a county recorder, title insurance company, escrow company, real estate broker, real estate agent or association provides a copy of a declaration, governing document or deed to any person, California law requires that the document provided shall include a statement regarding any unlawful restrictions.  Said statement is to be in at least 14-point bold face type and may be stamped on the first page of any document provided or included as a cover page attached to the requested document.  Should a party to this transaction request a copy of any document reported herein that fits this category, the statement is to be included in the manner described.

**Note 4.**     Wiring instructions for Fidelity National Title Company of California, Truckee, CA, are as follows:

| | |
|---|---|
| Receiving Bank: | Bank of America |
| | 275 Valencia Blvd, 2nd Floor |
| | Brea, CA 92823-6340 |
| ABA Routing No.: | 026009593 |
| Credit Account Name: | Fidelity National Title Company of California - Truckee |
| | 10825 Pioneer Trail, Suite 106A, Truckee, CA 96161 |
| Credit Account No.: | 12352-19712 |
| Escrow No.: | 10-**502880**-LG |

These wiring instructions are for this specific transaction involving the Title Department of the Rancho Cordova office of Fidelity National Title Company of California. These instructions therefore should not be used in other transactions without first verifying the information with our accounting department. It is imperative that the wire text be exactly as indicated. Any extraneous information may cause unnecessary delays in confirming the receipt of funds.

**Note 5.**     Any documents being executed in conjunction with this transaction must be signed in the presence of an authorized Company employee, an authorized employee of an agent, an authorized employee of the insured lender, or by using Bancserv or other approved third-party service. If the above requirements cannot be met, please call the company at the number provided in this report.

**END OF NOTES**



IMPORTANT This plat is not a survey, it is merely furnished as a convenience to locate the land in relation to adjoining streets and other lands, and not to guarantee dimensions, distances, bearings or acreage.

TAHOE DONNER UNIT No. 5 SUB. Bk. 4, Pg. 36

ASSESSOR'S PARCEL MAP
(this map was prepared for assessment)

Assessor's Map Bk. 44—Pg. 44
County of Nevada, Calif
1-1-99

# ATTACHMENT ONE

## AMERICAN LAND TITLE ASSOCIATION
## RESIDENTIAL TITLE INSURANCE POLICY (6-1-87) EXCLUSIONS

In addition to the Exceptions in Schedule B, you are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1. Governmental police power, and the existence or violation of any law or government regulation. This includes building and zoning ordinances and also laws and regulations concerning:
   - land use
   - improvements on the land
   - land division
   - environmental protection

   This exclusion does not apply to violations or the enforcement of these matters which appear in the public records at policy date.

   This exclusion does not limit the zoning coverage described in Items 12 and 13 of Covered Title Risks.

2. The right to take the land by condemning it, unless:
   - a notice of exercising the right appears in the public records on the Policy Date
   - the taking happened prior to the Policy Date and is binding on you if you bought the land without knowledge of the taking

3. Title Risks:
   - that are created, allowed, or agreed to by you
   - that are known to you, but not to us, on the Policy Date- unless they appeared in the public records
   - that result in no loss to you
   - that first affect your title after the Policy Date - this does not limit the labor and material lien coverage in Item 8 of Covered Title Risks

4. Failure to pay value for your title.

5. Lack of a right:
   - to any land outside the area specifically described and referred to in Item 3 of Schedule A

   or

   - in streets, alleys, or waterways that touch your land

   This exclusion does not limit the access coverage in Item 5 of Covered Title Risks.

In addition to the Exclusions, you are not insured against loss, costs, attorneys' fees, and the expenses resulting from:

1. Any rights, interests, or claims of parties in possession of the land not shown by the public records.

2. Any easements or liens not shown by the public records. This does not limit the lien coverage in Item 8 of Covered Title Risks.

3. Any facts about the land which a correct survey would disclose and which are not shown by the public records. This does not limit the forced removal coverage in Item 12 of Covered Title Risks.

4. Any water rights or claims or title to water in or under the land, whether or not shown by the public records.

**CALIFORNIA LAND TITLE ASSOCIATION STANDARD COVERAGE POLICY - 1990**
**EXCLUSIONS FROM COVERAGE**

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

   (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3. Defects, liens, encumbrances, adverse claims, or other matters:

   (a) whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;

   (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;

   (c) resulting in no loss or damage to the insured claimant;

   (d) attaching or created subsequent to Date of Policy; or

   (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.

4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable doing business laws of the state in which the land is situated.

5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6. Any claim, which arises out of the transaction vesting in the insured the estate or interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

**SCHEDULE B, PART I**
**EXCEPTIONS FROM COVERAGE**

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

**PART I**

1. Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records. Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.

2. Any facts, rights, interests or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.

3. Easements, liens or encumbrances, or claims thereof, not shown by the public records.

4. Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.

5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the public records.

6. Any lien or right to a lien for services, labor or material not shown by the public records.

# ATTACHMENT ONE
## (CONTINUED)

## FORMERLY AMERICAN LAND TITLE ASSOCIATION LOAN POLICY (10-17-92)
### WITH A.L.T.A. ENDORSEMENT-FORM 1 COVERAGE
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
   (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.
3. Defects, liens, encumbrances, adverse claims, or other matters:
   (a) created, suffered, assumed or agreed to by the insured claimant;
   (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;
   (c) resulting in no loss or damage to the insured claimant;
   (d) attaching or created subsequent to Date of Policy (except to the extent that this policy insures the priority of the lien of the insured mortgage over any statutory lien for services, labor or

material or to the extent insurance is afforded herein as to assessments for street improvements under construction or completed at Date of Policy); or
   (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage.
4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with applicable doing business laws of the state in which the land is situated.
5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.
6. Any statutory lien for services, labor or materials (or the claim of priority of any statutory lien for services, labor or materials over the lien of the insured mortgage) arising from an improvement or work related to the land which is contracted for and commenced subsequent to Date of Policy and is not financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance.
7. Any claim, which arises out of the transaction creating the interest of the mortgagee insured by this policy, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that is based on:
   (i) the transaction creating the interest of the insured mortgagee being deemed a fraudulent conveyance or fraudulent transfer; or
   (ii) the subordination of the interest of the insured mortgagee as a result of the application of the doctrine of equitable subordination; or
   (iii) the transaction creating the interest of the insured mortgagee being deemed a preferential transfer except where the preferential transfer results from the failure:
      (a) to timely record the instrument of transfer; or
      (b) of such recordation to impart notice to a purchaser for value or a judgement or lien creditor.

The above policy form may be issued to afford either Standard Coverage or Extended Coverage.
In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

## EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1. Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records. Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.
2. Any facts, rights, interests or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.
3. Easements, liens or encumbrances, or claims thereof, not shown by the public records.

4. Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.
5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.
6. Any lien or right to a lien for services, labor or material not shown by the public records.

# ATTACHMENT ONE
## (CONTINUED)

### 2006 AMERICAN LAND TITLE ASSOCIATION LOAN POLICY (06-17-06)
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
   (i) the occupancy, use, or enjoyment of the Land;
   (ii) the character, dimensions, or location of any improvement erected on the Land;
   (iii) the subdivision of land; or
   (iv) environmental protection;
or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
(b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3. Defects, liens, encumbrances, adverse claims, or other matters
(a) created, suffered, assumed, or agreed to by the Insured Claimant;
(b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

(c) resulting in no loss or damage to the Insured Claimant;
(d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13, or 14); or
(e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.

4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.

5. Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law.

6. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
(a) a fraudulent conveyance or fraudulent transfer, or
(b) a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy.

7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records. This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b).

The above policy form may be issued to afford either Standard Coverage or Extended Coverage.
In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

## EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) that arise by reason of:

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2. Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.

3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.

4. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.

5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.

6. Any lien or right to a lien for services, labor or material not shown by the public records.

## FORMERLY AMERICAN LAND TITLE ASSOCIATION OWNER'S POLICY (10-17-92)
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

 (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3. Defects, liens, encumbrances, adverse claims, or other matters:

 (a) created, suffered, assumed or agreed to by the insured claimant;

 (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;

 (c) resulting in no loss or damage to the insured claimant;

 (d) attaching or created subsequent to Date of Policy, or

 (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the estate or interest insured by this policy.

4. Any claim, which arises out of the transaction vesting in the insured the estate or interest insured by this policy, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that is based on:

 (i) the transaction creating the estate or interest insured by this policy being deemed a fraudulent conveyance or fraudulent transfer; or

 (ii) the transaction creating the estate or interest insured by this policy being deemed a preferential transfer except where the preferential transfer results from the failure:

  (a) to timely record the instrument of transfer; or

  (b) of such recordation to impart notice to a purchaser for value or a judgement or lien creditor.

The above policy form may be issued to afford either Standard Coverage or Extended Coverage.
In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

### EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1. Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records. Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.

2. Any facts, rights, interests or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.

3. Easements, liens or encumbrances, or claims thereof, not shown by the public records.

4. Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.

5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.

6. Any lien or right to a lien for services, labor or material not shown by the public records.

# ATTACHMENT ONE
## (CONTINUED)

### 2006 AMERICAN LAND TITLE ASSOCIATION OWNER'S POLICY (06-17-06)
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
   (i) the occupancy, use, or enjoyment of the Land;
   (ii) the character, dimensions, or location of any improvement erected on the Land;
   (iii) the subdivision of land; or
   (iv) environmental protection;
   or the effect of any violation of these laws, ordinances, or governmental regulations This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
   (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims, or other matters
   (a) created, suffered, assumed, or agreed to by the Insured Claimant;
   (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   (c) resulting in no loss or damage to the Insured Claimant;
   (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or
   (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.
4. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is
   (a) a fraudulent conveyance or fraudulent transfer; or
   (b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.
5. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The above policy form may be issued to afford either Standard Coverage or Extended Coverage.
In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

### EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) that arise by reason of:

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2. Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.
3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.
4. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.
5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6. Any lien or right to a lien for services, labor or material not shown by the public records.

# ATTACHMENT ONE
## (CONTINUED)

## CLTA HOMEOWNER'S POLICY OF TITLE INSURANCE (10-22-03)
## ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE (10-22-03)
### EXCLUSIONS

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1. Governmental police power, and the existence or violation of any law or government regulation. This includes ordinances, laws and regulations concerning:
   a. building
   b. zoning
   c. Land use
   d. improvements on Land
   e. Land division
   f. environmental protection
   This Exclusion does not apply to violations or the enforcement of these matters if notice of the violation or enforcement appears in the Public Records at the Policy Date.
   This Exclusion does not limit the coverage described in Covered Risk 14, 15, 16, 17 or 24.
2. The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This Exclusion does not apply to violations of building codes if notice of the violation appears in the Public Records at the Policy Date.
3. The right to take the Land by condemning it, unless:
   a. notice of exercising the right appears in the Public Records at the Policy Date; or

   b. the taking happened before the Policy Date and is binding on You if You bought the Land without Knowing of the taking.
4. Risks:
   a. that are created, allowed, or agreed to by You, whether or not they appear in the Public Records;
   b. that are Known to You at the Policy Date, but not to Us, unless they appear in the Public Records at the Policy Date;
   c. that result in no loss to You; or
   d. that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.d, 22, 23, 24 or 25.
5. Failure to pay value for Your Title.
6. Lack of a right:
   a. to any Land outside the area specifically described and referred to in paragraph 3 of Schedule A; and
   b. in streets, alleys, or waterways that touch the Land.
   This Exclusion does not limit the coverage described in Covered Risk 11 or 18.

## LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:

- For Covered Risk 14, 15, 16 and 18, Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.

The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

|  | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 14: | 1.00% of Policy Amount<br>or<br>$ 2,500.00<br>(whichever is less) | $ 10,000.00 |
| Covered Risk 15: | 1.00% of Policy Amount<br>or<br>$ 5,000.00<br>(whichever is less) | $ 25,000.00 |
| Covered Risk 16: | 1.00% of Policy Amount<br>or<br>$ 5,000.00<br>(whichever is less) | $ 25,000.00 |
| Covered Risk 18: | 1.00% of Policy Amount<br>or<br>$ 2,500.00<br>(whichever is less) | $ 5,000.00 |

**CLTA HOMEOWNER'S POLICY OF TITLE INSURANCE (01-01-08)**
**ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE (01-01-08)**
**EXCLUSIONS**

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1. Governmental police power, and the existence or violation of those portions of any law or government regulation concerning:
   a. building;
   b. zoning;
   c. land use;
   d. improvements on the Land;
   e. land division; and
   f. environmental protection.
   This Exclusion does not limit the coverage described in Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23 or 27.
2. The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This Exclusion does not limit the coverage described in Covered Risk 14 or 15.
3. The right to take the Land by condemning it. This Exclusion does not limit the coverage described in Covered Risk 17.

4. Risks:
   a. that are created, allowed, or agreed to by You, whether or not they are recorded in the Public Records;
   b. that are Known to You at the Policy Date, but not to Us, unless they are recorded in the Public Records at the Policy Date;
   c. that result in no loss to You; or
   d. that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.e., 25, 26, 27 or 28.
5. Failure to pay value for Your Title.
6. Lack of a right:
   a. to any land outside the area specifically described and referred to in paragraph 3 of Schedule A; and
   b. in streets, alleys, or waterways that touch the Land.
   This Exclusion does not limit the coverage described in Covered Risk 11 or 21.

### LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:

- For Covered Risk 16, 18, 19 and 21, Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.

The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

| | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | 1.00% of Policy Amount Shown in Schedule A or $ 2,500.00 (whichever is less) | $ 10,000.00 |
| Covered Risk 18: | 1.00% of Policy Amount Shown in Schedule A or $ 5,000.00 (whichever is less) | $ 25,000.00 |
| Covered Risk 19: | 1.00% of Policy Amount Shown in Schedule A or $ 5,000.00 (whichever is less) | $ 25,000.00 |
| Covered Risk 21: | 1.00% of Policy Amount Shown in Schedule A or $ 2,500.00 (whichever is less) | $ 5,000.00 |

# ATTACHMENT ONE
## (CONTINUED)

## ALTA EXPANDED COVERAGE RESIDENTIAL LOAN POLICY (10/13/01)
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the Land; (ii) the character, dimensions or location of any improvements now or hereafter erected on the Land; (iii) a separation in ownership or a change in the dimensions or areas of the Land or any parcel of which the Land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the Land has been recorded in the Public Records at Date of Policy. This exclusion does not limit the coverage provided under Covered Risks 12, 13, 14, and 16 of this policy.
(b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the Land has been recorded in the Public Records at Date of Policy. This exclusion does not limit the coverage provided under Covered Risks 12, 13, 14, and 16 of this policy.

2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the Public Records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without Knowledge.

3. Defects, liens, encumbrances, adverse claims or other matters:
(a) created, suffered, assumed or agreed to by the Insured Claimant;
(b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
(c) resulting in no loss or damage to the Insured Claimant;
(d) attaching or created subsequent to Date of Policy (this paragraph does not limit the coverage provided under Covered

Risks 8, 16, 18, 19, 20, 21, 22, 23, 24, 25 and 26); or
(e) resulting in loss or damage which would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.

4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of the Insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with applicable doing business laws of the state in which the Land is situated.

5. Invalidity or unenforceability of the lien of the Insured Mortgage, or claim thereof, which arises out of the transaction evidenced by the Insured Mortgage and is based upon usury, except as provided in Covered Risk 27, or any consumer credit protection or truth in lending law.

6. Real property taxes or assessments of any governmental authority which become a lien on the Land subsequent to Date of Policy. This exclusion does not limit the coverage provided under Covered Risks 7, 8(e) and 26.

7. Any claim of invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as to advances or modifications made after the Insured has Knowledge that the vestee shown in Schedule A is no longer the owner of the estate or interest covered by this policy. This exclusion does not limit the coverage provided in Covered Risk 8.

8. Lack of priority of the lien of the Insured Mortgage as to each and every advance made after Date of Policy, and all interest charged thereon, over liens, encumbrances and other matters affecting the title, the existence of which are Known to the Insured at:
(a) The time of the advance; or
(b) The time a modification is made to the terms of the Insured Mortgage which changes the rate of interest charged, if the rate of interest is greater as a result of the modification than it would have been before the modification. This exclusion does not limit the coverage provided in Covered Risk 8.

9. The failure of the residential structure, or any portion thereof to have been constructed before, on or after Date of Policy in accordance with applicable building codes. This exclusion does not apply to violations of building codes if notice of the violation appears in the Public Records at Date of Policy.

**ALTA EXPANDED COVERAGE RESIDENTIAL LOAN POLICY (01/01/08)**
**EXCLUSIONS FROM COVERAGE**

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
   (i) the occupancy, use, or enjoyment of the Land;
   (ii) the character, dimensions, or location of any improvement erected on the Land;
   (iii) the subdivision of land; or
   (iv) environmental protection;
   or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.
   (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims, or other matters
   (a) created, suffered, assumed, or agreed to by the Insured Claimant;
   (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   (c) resulting in no loss or damage to the Insured Claimant;
   (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under

Covered Risk 11, 16, 17, 18, 19, 20, 21, 22, 23, 24, 27 or 28); or
   (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.
5. Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury, or any consumer credit protection or truth-in-lending law. This Exclusion does not modify or limit the coverage provided in Covered Risk 26.
6. Any claim of invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as to Advances or modifications made after the Insured has Knowledge that the vestee shown in Schedule A is no longer the owner of the estate or interest covered by this policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11.
7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching subsequent to Date of Policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11(b) or 25.
8. The failure of the residential structure, or any portion of it, to have been constructed before, on or after Date of Policy in accordance with applicable building codes. This Exclusion does not modify or limit the coverage provided in Covered Risk 5 or 6.

# Notice

You may be entitled to receive a $20.00 discount on escrow services if you purchased, sold or refinanced residential property in California between May 19, 1995 and November 1, 2002. If you had more than one qualifying transaction, you may be entitled to multiple discounts.

If your previous transaction involved the same property that is the subject of your current transaction, you do not have to do anything; the Company will provide the discount, provided you are paying for escrow or title services in this transaction.

If your previous transaction involved property different from the property that is subject of your current transaction, you must - prior to the close of the current transaction - inform the Company of the earlier transaction, provide the address of the property involved in the previous transaction, and the date or approximate date that the escrow closed to be eligible for the discount.

Unless you inform the Company of the prior transaction on property that is not the subject of this transaction, the Company has no obligation to conduct an investigation to determine if you qualify for a discount. If you provide the Company information concerning a prior transaction, the Company is required to determine if you qualify for a discount which is subject to other terms and conditions.

(privacy)(05-08)

Effective Date: 5/1/2008

Fidelity National Financial, Inc.
**Privacy Statement**

Fidelity National Financial, Inc. and its subsidiaries ("FNF") respect the privacy and security of your non-public personal information ("Personal Information") and protecting your Personal Information is one of our top priorities. This Privacy Statement explains FNF's privacy practices, including how we use the Personal Information we receive from you and from other specified sources, and to whom it may be disclosed. FNF follows the privacy practices described in this Privacy Statement and, depending on the business performed, FNF companies may share information as described herein.

**Personal Information Collected**
We may collect Personal Information about you from the following sources:
- Information we receive from you on applications or other forms, such as your name, address, social security number, tax identification number, asset information, and income information;
- Information we receive from you through our Internet websites, such as your name, address, email address, Internet Protocol address, the website links you used to get to our websites, and your activity while using or reviewing our websites;
- Information about your transactions with or services performed by us, our affiliates, or others, such as information concerning your policy, premiums, payment history, information about your home or other real property, information from lenders and other third parties involved in such transaction, account balances, and credit card information; and
- Information we receive from consumer or other reporting agencies and publicly recorded documents.

**Disclosure of Personal Information**
We may provide your Personal Information (excluding information we receive from consumer or other credit reporting agencies) to various individuals and companies, as permitted by law, without obtaining your prior authorization. Such laws do not allow consumers to restrict these disclosures. Disclosures may include, without limitation, the following:
- To insurance agents, brokers, representatives, support organizations, or others to provide you with services you have requested, and to enable us to detect or prevent criminal activity, fraud, material misrepresentation, or nondisclosure in connection with an insurance transaction;
- To third-party contractors or service providers for the purpose of determining your eligibility for an insurance benefit or payment and/or providing you with services you have requested;
- To an insurance regulatory authority, or a law enforcement or other governmental authority, in a civil action, in connection with a subpoena or a governmental investigation;
- To companies that perform marketing services on our behalf or to other financial institutions with which we have joint marketing agreements and/or
- To lenders, lien holders, judgment creditors, or other parties claiming an encumbrance or an interest in title whose claim or interest must be determined, settled, paid or released prior to a title or escrow closing.

We may also disclose your Personal Information to others when we believe, in good faith, that such disclosure is reasonably necessary to comply with the law or to protect the safety of our customers, employees, or property and/or to comply with a judicial proceeding, court order or legal process.

Effective Date: 5/1/2008

Disclosure to Affiliated Companies - We are permitted by law to share your name, address and facts about your transaction with other FNF companies, such as insurance companies, agents, and other real estate service providers to provide you with services you have requested, for marketing or product development research, or to market products or services to you. We do not, however, disclose information we collect from consumer or credit reporting agencies with our affiliates or others without your consent, in conformity with applicable law, unless such disclosure is otherwise permitted by law.

Disclosure to Nonaffiliated Third Parties - We do not disclose Personal Information about our customers or former customers to nonaffiliated third parties, except as outlined herein or as otherwise permitted by law.

**Confidentiality and Security of Personal Information**
We restrict access to Personal Information about you to those employees who need to know that information to provide products or services to you. We maintain physical, electronic, and procedural safeguards that comply with federal regulations to guard Personal Information.

**Access To Personal Information/**
**Requests for Correction, Amendment, or Deletion of Personal Information**
As required by applicable law, we will afford you the right to access your Personal Information, under certain circumstances to find out to whom your Personal Information has been disclosed, and request correction or deletion of your Personal Information. However, FNF's current policy is to maintain customers' Personal Information for no less than your state's required record retention requirements for the purpose of handling future coverage claims.

For your protection, all requests made under this section must be in writing and must include your notarized signature to establish your identity. Where permitted by law, we may charge a reasonable fee to cover the costs incurred in responding to such requests. Please send requests to:

Chief Privacy Officer
Fidelity National Financial, Inc.
601 Riverside Avenue
Jacksonville, FL 32204

**Changes to this Privacy Statement**
This Privacy Statement may be amended from time to time consistent with applicable privacy laws. When we amend this Privacy Statement, we will post a notice of such changes on our website. The effective date of this Privacy Statement, as stated above, indicates the last time this Privacy Statement was revised or materially changed.

## Notice of Available Discounts

Pursuant to Section 2355.3 in Title 10 of the California Code of Regulations Fidelity National Financial, Inc. and its subsidiaries ("FNF") must deliver a notice of each discount available under our current rate filing along with the delivery of escrow instructions, a preliminary report or commitment. Please be aware that the provision of this notice does not constitute a waiver of the consumer's right to be charged the filed rate. As such, your transaction may not qualify for the below discounts.

You are encouraged to discuss the applicability of one or more of the below discounts with a Company representative. These discounts are generally described below; consult the rate manual for a full description of the terms, conditions and requirements for such discount. These discounts only apply to transactions involving services rendered by the FNF Family of Companies. This notice only applies to transactions involving property improved with a one-to-four family residential dwelling.

### FNF Underwritten Title Companies
FNTC – Fidelity National Title Company
FNTCCA – Fidelity National Title Company of California

### FNF Underwriter
FNTIC – Fidelity National Title Insurance Co.

### Available Discounts
**CREDIT FOR PRELIMINARY REPORTS AND/OR COMMITMENTS ON SUBSEQUENT POLICIES (FNTIC)**
Where no major change in the title has occurred since the issuance of the original report or commitment, the order may be reopened within 12 months and all or a portion of the charge previously paid for the report or commitment may be credited on a subsequent policy charge within the following time period from the date of the report.

**FEE REDUCTION SETTLEMENT PROGRAM (FNTC, FNTCCA and FNTIC)**
Eligible customers shall receive a $20.00 reduction in their title and/or escrow fees charged by the Company for each eligible transaction in accordance with the terms of the Final Judgments entered in The People of the State of California.

**DISASTER LOANS (FNTIC)**
The charge for a Lender's Policy (Standard or Extended coverage) covering the financing or refinancing by an owner of record, within 24 months of the date of a declaration of a disaster area by the government of the United States or the State of California on any land located in said area, which was partially or totally destroyed in the disaster, will be 50% of the appropriate title insurance rate.

**CHURCHES OR CHARITABLE NON-PROFIT ORGANIZATIONS (FNTIC)**
On properties used as a church or for charitable purposes within the scope of the normal activities of such entities, provided said charge is normally the church's obligation the charge for an owner's policy shall be 50% to 70% of the appropriate title insurance rate, depending on the type of coverage selected. The charge for a lender's policy shall be 40% to 50% of the appropriate title insurance rate, depending on the type of coverage selected.

**EMPLOYEE RATE (FNTC, FNTCCA and FNTIC)**
No charge shall be made to employees (including employees on approved retirement) of the Company or its underwritten, subsidiary or affiliated title companies for policies or escrow services in connection with financing, refinancing, sale or purchase of the employees' bona fide home property. Waiver of such charges is authorized only in connection with those costs which the employee would be obligated to pay, by established custom, as a party to the transaction.

**Exhibit 3----Economics of the Sale**

*Exhibit 3*

ADDENDUM 4

09-38415
LINDA P. CURRY
PO BOX 3419
TRUCKEE, CA 96160

|  | Realtor Opinion | Recent |
|---|---|---|
| Marketable Price | $60,000.00 | $48,336.00 |
| + or – Economic Forecast | -$6,000.00 |  |
| less selling commission and title exp. | -$5,800.00 | -$2900.16 |
| less property tax liens & HOA liens | -$3,000.00 | -$6392.20 |
| less Exemption | -$21,825.00 | -$21,825.00 |
| Possible estate equity | $23,375.00 | $17,218.64 |

Created by Thomas E. May Trustee 1/21/10
Updated by Thomas E May Trustee
5/1/10

